**UNITED STATES of America**

v.

**Larry R. TURNER.**

**Crim. No. 1467-71.**

United States District Court,
District of Columbia.

Feb. 25, 1972.

Brian W. Shaughnessy, Raymond Banoun, Washington, D. C., for the Government.

Jon P. Axelrod, Washington, D. C., for defendant.

RICHEY, Judge.

This case is before the Court pursuant to the defendant's Motion for a Civil Commitment in Lieu of Prosecution under Title I of the Narcotic Addict Rehabilitation Act (NARA), 28 U.S.C. § 2901 et seq. (1970). Since the defendant is charged with an unarmed street robbery, the government urges denial of the defendant's motion because Congress has specifically excluded persons charged with crimes of violence from the benefits of Title I of NARA. The government contends that the defendant is ineligible for treatment under the Act, since an unarmed street robbery is by definition a crime of violence under NARA.[1] The defendant counters this position by arguing that he is a drug addict who would benefit from the treatment and counseling stemming from a commitment under Title I of NARA. Furthermore, the defendant contends that Title I of NARA, 28 U.S.C. § 2901 et seq. (1970), is unconstitutional on its face and as applied to the facts herein.

## DEFENDANT'S BACKGROUND

The Court has had the opportunity to carefully examine the defendant's background, and it believes that a brief summary is appropriate at this point. The evidence shows that the defendant is a twenty-two year old young man who was born with a twin brother on March 23, 1949, in Emporia, Virginia. The defendant and his brother were reared primarily by their grandmother until 1964, when they came to Washington to live with their mother, step-father and an older brother. The defendant dropped out of school sometime between the sixth and eighth grades in order to go to work. Eventually, the defendant, due to a lack of intellect, experience and strength of personality, became involved with an undesirable group of friends. This led to a juvenile record (primarily in the form of unauthorized use of automobile charges) and later a drug-oriented life style. In 1970 the defendant was convicted as an adult for petit larceny,

---

1. The police record in evidence discloses that the defendant walked up to the complainant and said: "Give me your money!" This resulted in a taking of $12.50, but no physical harm to anyone.

and in 1971 he was convicted for a violation of the Uniform Narcotics Act.

The evidence herein is also *undisputed* as to the following with respect to the defendant:

(1) To date he has received no meaningful and effective treatment for his drug addiction.

(2) At present, medical authorities state that the defendant's drug addiction supercedes in importance his other problems—personal and psychological.

(3) The recent history of the accused suggests that he cannot benefit from a community-based narcotic treatment program.

(4) Medical authorities state that the defendant can be helped in a controlled institutional setting which is designed for the treatment of addicts both with regard to their drug addiction and the underlying factors influencing their dependence on drugs.

(5) There are currently no correctional or other appropriate facilities in the District of Columbia available to meet the needs of the defendant and hundreds like him. However, the NARA facility at Lexington, Kentucky, is available for individuals who have the same problem.

(6) The defendant is not a hardened criminal in the classical sense, but a somewhat impoverished individual who is not in control of the events of his life, and who needs assistance in understanding himself in order to come to terms with the factors that have led him down the path of drugs and criminal activity.

■ The defendant argues and the evidence supports the conclusion that incarceration in District of Columbia or regular penal facilities will do nothing to solve his problem of drug addiction or his underlying problems. The Court fully agrees with the defendant on this issue. As indicated earlier in this opinion, the defendant has already been incarcerated for both juvenile and adult offenses, but at no time has he received extensive treatment for his narcotics addiction. Should the defendant be convicted for the instant offense, he will still receive no help with respect to his addiction to drugs, since he would not be eligible for a commitment under Title II of NARA, 18 U.S.C. § 4251 et seq. (1970), since the same exclusion for crimes of violence is present in that title as is present in Title I.

The Court believes that it must state quite frankly that it is very troubled by the defendant's dilemma. It is shameful that our laws and society will not permit the defendant this opportunity of evaluation and therapeutic and psychological treatment under tightly controlled supervision. Moreover, the Congress and our society have become more aware of how to deal with drug addicts than was the case in 1966 when NARA was enacted. The facts and evidence here demonstrate conclusively that this defendant and others similarly situated need to be treated—not incarcerated and hardened further in the ways of crime.

## DISCUSSION OF NARA

Before the Court addresses itself to the issue of constitutionality, it is felt that a brief discussion of the Narcotic Addict Rehabilitation Act is in order. The Act was passed by Congress in 1966, and the legislative history clearly shows that the purpose was to provide comprehensive treatment for drug addicts both within and without the context of federal criminal cases. Title I of NARA, 28 U.S.C. § 2901, et seq. (1970), provides the alternative of civil commitment in lieu of criminal prosecution in the discretion of the District Court, and it is this section which is the subject of the instant defense motion. Title II, 18 U.S.C. § 4251 et seq. (1970), permits the sentencing judge to commit a convicted offender to a narcotics rehabilitation facility instead of a prison. Title III, 42 U.S.C. § 3401, et seq. (1970), provides for a straight civil commitment of narcotic addicts who are not charged with a criminal offense.

Both Title I, as provided in 28 U.S.C. § 2901(g) (1), and Title II, as provided in 18 U.S.C. § 4251(f) (1), exclude from the benefits of the Act those charged or convicted with a crime of violence. The terminology "crimes of violence" is statutorily defined in 28 U.S.C. § 2901(e) and 18 U.S.C. § 4251(b) respectively and includes the offense of robbery. As was stated earlier, the defendant in the case at bar is charged with committing an unarmed street robbery, which he alleges he perpetrated in order to sustain his habit. Under the Act, as presently drafted, it is clear that the defendant cannot be either civilly committed or even sentenced, should he be found guilty of the robbery offense, to NARA type facilities.

### CONSTITUTIONALITY OF TITLE I ON ITS FACE

At this point the Court must first determine whether Title I of NARA, 28 U.S.C. § 2901, et seq. (1970), is unconstitutional on its face as argued by the defendant. The defendant contends that the statute as presently drafted constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution, which has been held to be incorporated into the Due Process Clause of the Fifth Amendment. *See,* Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). It is argued that Congress acted arbitrarily when it automatically excluded from NARA treatment those addicts who have been charged or convicted with crimes of violence. Further, the defendant states that the distinction made between the addicts fails to demonstrate any "relevance to the purpose for which the classification is made." Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966). Finally, the defendant cites Watson v. United States, 439 F.2d 442 (D.C.Cir., 1970), for the proposition that "discrimination between the two classes of addicts is constitutionally unacceptable." *Id.* at 457. In Watson v. United States, *supra,* the United States Court of Appeals for the District of Columbia held the provisions of 18 U.S.C. § 4251(f) (4) (1970), which automatically excludes an offender who has been convicted of a felony on two or more prior occasions to be violative of equal protection. It should be noted, however, that the Court of Appeals restricted its ruling to the facts of the case and the disqualifying exclusion of Title II as applied to the appellant. The Court in *Watson, supra* at 457, considered it crucial that the appellant was a narcotics addict of long standing, and that his eligibility would have been patent except for the fact that he had two prior narcotics convictions that were felonies. The Court of Appeals therefore concluded that the Constitution required eligibility due to the peculiar facts presented by appellant's situation. More recently, however, the United States Court of Appeals for the District of Columbia in United States v. Leazer, Criminal No. 24,799 (D.C.Cir., decided January 19, 1972) indicated that the classifications made by Congress in NARA were based on the "legitimate goal of deterrence," and the court stated that it was in no position to say that such a policy judgment was not proper. *Id.* at 5.

In any case where the constitutionality of a statute is questioned, there is a presumption of constitutionality, and there is an extremely heavy burden on the questioning party to rebut the presumption. Having given full consideration to the arguments and memoranda by both counsel, the Court finds that it is compelled by the decisions of Baxstrom v. Herold, *supra,* and United States v. Leazer, *supra,* to uphold Title I of NARA as constitutional on its face.

### CONSTITUTIONALITY OF TITLE I AS APPLIED

The second issue before the Court is whether or not Title I of NARA is constitutional as applied to the facts in the instant case. The defendant has urged that the Court should follow the Court of Appeals decision in Watson v. United States, *supra,* which held that the two prior felony exclusion provision as applied in that case was unconstitutional. The Court notes several impor-

tant differences between *Watson* and the instant case. First of all, the crime in *Watson* was clearly nonviolent in nature. Secondly, in *Watson* the defendant was clearly the kind of individual that Congress wished to treat under NARA. Thirdly, there was obvious unequal treatment given to narcotics addicts charged or convicted of similar narcotics offenses. In the case at bar it has been shown that all individuals who have been charged with crimes of violence have been excluded from the benefits of NARA, therefore all persons in the defendant's status have received equal treatment. Congress has clearly indicated in its legislative history of NARA that it wished to exclude addicts charged or convicted of crimes of violence. Based on the foregoing, the Court concludes that Title I of NARA as applied to the facts in the instant case is constitutional.

## CONCLUSION

Although this Court has determined the statute to be constitutional in the instant case, the Court believes that further comment is necessary. The Court has had the opportunity to do much research in the area of drug related crime and the treatment facilities available in the District of Columbia. As a result of this research, the Court makes the following findings:

(1) Although drug addicts have traditionally committed nonviolent crimes, such as shoplifting and forgery, to get their drug money, the increased cost of drugs has led addicts to the commission of more armed robberies and other violent crimes.

(2) Because narcotics addicts continually commit crimes to support their addiction and because narcotics addicts are not cured without extensive treatment, statistics prove that addicts are more apt to become recidivists after they are released from penal institutions.

(3) The cost of drug related crime to the District of Columbia citizens totals more than $30 million a year us-ing the most conservative figures available. Some estimates run as high as $200 million a year.

(4) While statistics are not precisely ascertainable at the present time, prison officials and medical authorities state that narcotics addiction is at epidemic levels among inmates.

(5) Currently, correctional officials state that there is a lack of narcotics treatment available for inmates in the District of Columbia correctional facilities, except in cases of emergency, such as extreme sickness resulting from withdrawal.

(6) The Narcotics Treatment Administration Program is available to a defendant only on an out-patient basis while he is on bond prior to trial or pending sentence upon conviction. No NTA program is available to a defendant during incarceration in a District of Columbia penal institution.

Because of this Court's position in the governmental scheme, the defendant and other addicts similarly situated must rely upon Congress, business leaders in the community, city officials and the public to pass legislation and establish drug treatment programs which will assist in the cure of addiction. It is clear that treatment and/or rehabilitation benefits society by reducing the cost of addiction. For example, the cost of treatment under the Narcotic Treatment Administration Program is approximately $2,000 a year for each addict. Assuming one established a program for treatment of 1,000 addicts, the cost for treatment would be approximately $2 million. Statistics clearly show that an 80% success rate would result in a cost benefit of approximately $16 million. *See*, The Economics of Drug Addiction and Control in Washington, D. C.: A Model for Estimation of Costs and Benefits of Rehabilitation, at 65 (1970).

Aside from the monetary cost benefits of a successful drug treatment program, several other benefits will result, such as:

(1) A reduction or abstinence from the use of drugs by the addict;

(2) A reduction in crime related to addiction;

(3) A reduction in the demands on the criminal justice system, because there will be less crimes to be prosecuted and a decrease in recidivism;

(4) An increase in productivity of the addict;

(5) An increase in the physical and psychic well-being of the addict.

The goal in enlightened correctional philosophy is rehabilitation. If society demands that individuals, such as the defendant, must be held criminally responsible for their actions despite the fact that they are products of addiction, then the burden is on society to make every effort to rehabilitate that person. Although medical science has not been able to find a cure for cancer, it is a verifiable fact that narcotics addiction can now be successfully treated. This Court hereby calls upon the Congress, the public, and the entire community to take immediate steps to inaugurate a meaningful program for dealing with addicts along the lines outlined in Title I of NARA.