469 F.2d 1337
 UNITED STATES of America, Appellee,
v.
Robert BISHOP, Defendant-Appellant.
 No. 72-1148.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 6, 1972.
Decided Nov. 22, 1972.
 
 Charles P. Dattola, Boston, Mass., with whom Henry F. Owens, III, and Owens & Dilday, Boston, Mass., were on brief, for appellant.
 Frederic R. Kellogg, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.
 Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and HAMLEY,* Senior Circuit Judge.
 COFFIN, Chief Judge.
 
 
 1
 Appellant, Robert Bishop, was convicted on two counts of sale of heroin, under 21 U.S.C. Sec. 841(a)(1), and sentenced to five years imprisonment and a special parole term of three years. On this appeal, he raises three claims: (1) that the provision of the Narcotic Addict Rehabilitation Act of 1966, barring all offenders with two prior felony convictions from being considered for treatment commitment in lieu of imprisonment, is a denial of the equal protection element of the Fifth Amendment; (2) that his conviction cannot stand because his heroin addiction so substantially impaired his behavioral controls that he lacked the criminal capacity required by the common law concept of mens rea; and (3) that the cruel and unusual punishment clause of the Eighth Amendment similarly precludes conviction of an addict whose control is substantially impaired.
 
 
 2
 In 1966, Congress enacted the Narcotic Addict Rehabilitation Act, P.L. 89-793, 80 Stat. 1438 [hereinafter NARA], a major revision of the federal court procedures for dealing with drug-addicted individuals. Title I of the Act, now 28 U.S.C. Secs. 2901-06, provides for civil treatment commitment before trial of persons charged with federal crimes, and dismissal of the charges upon successful completion of the treatment. Title II, now 18 U.S.C. Secs. 4251-55, provides for similar commitment in lieu of imprisonment for those convicted of a federal crime. Title III, now 42 U.S.C. Secs. 3411-26, provides for civil commitment of persons not involved in the criminal process. In each case, after following the prescribed procedures, including commitment for an examination, the court must determine whether the individual is an addict, as defined in the statute, 28 U.S.C. Sec. 2901(a), 18 U.S.C. Sec. 4251(a), 42 U.S.C. Sec. 3411(a), and whether he "is likely to be rehabilitated through treatment", 28 U.S.C. Sec. 2902(b), 18 U.S.C. Sec. 4253(a), 42 U.S.C. Sec. 3415. If it so finds, the court must commit the individual.
 
 
 3
 The first two titles contain, however, five parallel provisions, 28 U.S.C. Secs. 2901(g)(1)-(5), 18 U.S.C. Secs. 4251(f) (1)-(5), which exclude from eligibility for treatment consideration the following classes of addict-offenders:
 
 
 4
 (1) persons currently accused or convicted under federal law of a crime of violence, as defined in earlier subsections, 28 U.S.C. Sec. 2901(c), 18 U.S.C. Sec. 4251(b),
 
 
 5
 (2) persons currently accused or convicted under federal law of selling or importing or conspiring to sell or import a narcotic drug, except that Title II carves out of that class and makes eligible for commitment those that the court finds sold "for the primary purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use because of his addiction to such drug." 18 U.S.C. Sec. 4251(f)(2),
 
 
 6
 (3) persons against whom a felony charge (other than the one under which they are being processed) is outstanding or who have not completed a prior sentence, or period of probation or parole,
 
 
 7
 (4) persons "convicted of a felony on two or more prior occasions", 28 U. S.C. Sec. 2901(g)(4), 18 U.S.C. Sec. 4251(f)(4) (the provision under challenge here), and
 
 
 8
 (5) persons civilly committed three times previously under any state or any specified federal program.
 
 
 9
 The term "felony" used in the third and fourth exclusions is defined as any offense classified as a felony by 18 U.S.C. Sec. 1 or by the law of the jurisdiction in which the crime was committed at the time of its commission, 28 U.S.C. Sec. 2901(e), 18 U.S.C. Sec. 4251(d). Title III, which is designed for those not involved in the criminal process, contains only the third exclusion, worded to cover any criminal charge, 42 U.S.C. Sec. 3421.
 
 
 10
 Congress' general purpose in passing the statute was, as the House Report put it, "to provide for the treatment and rehabilitation of narcotic addicts when they are charged with or convicted of offenses against the United States."[1] To effectuate this broad goal, Congress expanded the disposition alternatives available to federal courts in criminal cases and gave the courts the discretion in employing the new procedures necessary for application of the law to those Congress intended to benefit.[2] As the House Committee noted:
 
 
 11
 "The practical effect of the implementation of the law provided for in the bill, is that strict punishment can be meted out where required to the hardened criminal, while justice can be tempered with judgment and fairness in those cases where it is to the best interest of society and the individual that such a course be followed."[3]
 
 
 12
 To assist courts in making the distinction between hardened addict-criminals deserving punishment and other addictcriminals deserving consideration for treatment, Congress enacted the five exclusions noted above.
 
 
 13
 "The definition of 'eligible individual' as set forth in the bill insures that the persons considered as candidates for civil commitment will not include criminals charged with violent crimes or be those whose records disclose a history of serious crimes."[4]
 
 
 14
 The two-prior-felony disqualification was viewed as the mechanism for insuring punishment for those with a "history of serious crimes".[5]
 
 
 15
 Congress intended that, except for those in the excluded categories, all federal offenders should be eligible for treatment commitment and for the court determinations of addiction and likelihood of rehabilitation that were made the sole prerequisites to commitment.[6] In light of the repeated and consistent testimony of all witnesses at the hearings, from the Attorney General on down, that narcotics addiction almost inevitably compels its victims to turn to crime and is a factor in practically all crimes that addicts commit,[7] it was thought inappropriate also to require as a condition of commitment that the court find a connection between the particular crime for which the defendant is being processed and his addiction, although such a requirement was specifically requested by the Judicial Conference.[8]
 
 
 16
 "[T]his close connection between crime and addiction is one of the basic reasons for this legislation. To require a court to establish such an explicit relationship would introduce a technicality which might serve to defeat one of the basic purposes of the bill which is to provide a practical and expeditious procedure to break a pattern of addiction and criminality."[9]
 
 
 17
 The only other specific guidepost erected by Congress was the maximum ten-year commitment period for post-conviction commitments, designed as a safeguard against judicial errors in determining the treatability of certain offenders.
 
 
 18
 "It also should be recognized that it provides a lengthy period of sentence for those recalcitrant offenders who do not respond to treatment."[10]
 
 
 19
 Congress could thus be said to have created three broad categories: hardened criminals not worthy of consideration by a court for treatment; hardened addicts who the court finds are not likely to, or actually do not, respond to treatment; and treatable addicts.
 
 
 20
 Appellant, who moved at the opening of his trial to be declared eligible for treatment under 18 U.S.C. Sec. 4251, argues that the flat exclusion of all addicts convicted twice previously of a felony is arbitrary and in no way related to the purpose of distinguishing hardened addict-criminals who are dangerous to society and deserve punishment from addict-criminals in need of treatment. He relies heavily on Watson v. United States, 141 U.S.App.D.C. 335, 439 F.2d 442 (1970), in which the District of Columbia Circuit, sitting en banc, held the two-prior felony disqualification here at issue unconstitutional because it found that the anomaly of permitting a onetime trafficking addict to get treatment while denying the opportunity to a three-time possessor of heroin for his own use was totally at odds with the Congressional purpose of distinguishing the hardened criminal from the addict deserving of treatment. The court also noted that it would rule the same way had Watson been convicted for the third time of selling heroin. Id. at 457.
 
 
 21
 The government claims that Watson is inapplicable here. It argues that the court in Watson was concerned about the situation where addicts made eligible for treatment by the proviso to Sec. 4251(f)(2) for sales made primarily to obtain drugs for one's own addiction were disqualified under Sec. 4251(f)(4) solely because they repeated that crime three times. That problem is said to be absent here because Bishop's prior felony convictions, in 1963 and 1964, were for non-narcotic offenses, specifically conspiracy to transport forged checks and conspiracy to transport implements used in forging and counterfeiting in interstate commerce, and thus as applied here the two-felony provision does not exclude a class of offenders specifically made eligible by Congress. Moreover, although admitting that Congress may have drawn the line at a somewhat arbitrary point, the government argues that the statutory distinction is reasonably related to the purpose of keeping the more criminally inclined out of NARA centers.[11]
 
 
 22
 We find, however, when reading Sec. 4251(f)(4) in conjunction with other parts of the Act, a whole series of anomalies, in the root sense of inequalities, indicating that the disqualification lacks "relevance to the purpose for which the classification is made". Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S. Ct. 1497, 1500, 16 L.Ed.2d 577 (1966); Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); see also James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972); Humphrey v. Cady, 405 U.S. 504, 92 S. Ct. 1048, 31 L.Ed.2d 394 (1972).
 
 
 23
 -In conjunction with Sec. 4251(f)(2). First, we find, as did the Watson court, anomalies when reading Sec. 4251(f)(4) in conjunction with Sec. 4251(f)(2), the exclusion of heroin sellers. Under (f)(2), a convicted seller like Bishop is eligible for treatment if he can show that the sale was made primarily to support his own habit,[12] even if he had once previously, before becoming addicted, sold heroin for profit, despite the fact that the non-addicted pusher was the very archetype of the hardened criminal that so worried Congress.[13] Yet under (f)(4), the same seller cannot get treatment if he had twice previously sold heroin, even though all three sales were for the primary purpose of satisfying his own habit. Similarly, one who sells heroin for his own addiction is eligible even though he had once previously, when not yet addicted, conspired to transport forged checks in interstate commerce as part of an illegal business, while one who had twice previously so conspired solely to get the funds necessary to support his addiction is not eligible for treatment.[14] These anomalies cannot be explained as a by-product of the strong prophylactic rule employed by Congress to insure exclusion of all hardened criminals, in this context those whose past crimes were not addiction-related. For the same rule which excludes all hardened criminals with two felonies includes all hardened criminals with one felony. It is also not a sufficient justification to note that this grossly over- and under-inclusive classification spares courts the time needed to determine addiction-relatedness and the difficulty of determining such questions on stale evidence. Courts are called upon repeatedly, in response to both constitutional and nonconstitutional claims, to spend time examining the validity of prior, often very old, Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), convictions, based on stale and often uncorroborated evidence. Nor can Congress' refusal in this statute to require an inquiry into past crimes be justified on the grounds that the interest here affected is relatively less important, for even in dealing with this interest, of eligibility for treatment commitment, it has acted inconsistently. Given the unanimous testimony that almost all addict-committed crimes spring from the addiction and the uncontradicted testimony that addicts usually are arrested and convicted of several offenses, both felonies and misdemeanors, in the first few years of their addiction,[15] it is contradictory to save judicial resources as to one prior felony so as to err on the side of including all those deserving treatment and use the same justification as to two felonies so as to err on the side of excluding undesirables.[16]
 
 
 24
 -In conjunction with Sec. 4251(f)(1). A similar inconsistency arises in connection with Sec. 4251(f)(1), the disqualification for those convicted of a crime of violence. If one has just been convicted of one of the carefully enumerated crimes defined in Sec. 4251(b), then one is disqualified. If one had been previously so convicted, but this time was convicted of a non-violent crime, one would be eligible. This oddity could be justified by the theory that as to one freshly convicted for violence, there is certainty of his dangerousness, but if the violent crime is old and the present one non-violent, the proposition is less evident. Pursuing that view, it might be argued that two prior violent crimes would be sufficient evidence of a pattern of dangerousness to support a flat disqualification. But the two-prior-felony exclusion is not limited to crimes of violence. Again it is wholly at odds with the Congressional purpose to include a one-time violent offender but exclude a two-time non-violent offender.[17]
 
 
 25
 -In conjunction with Sec. 4251(d). A similarly egregious anomaly appears when Sec. 4251(f)(4) is read in combination with the "felony" definition. Subsection 4251(d) defines a felony as any federal offense defined as one by 18 U.S.C. Sec. 1,
 
 
 26
 "and further includes any offense in violation of a law of any State, any possession or territory of the United States, the District of Columbia, the Canal Zone, or the Commonwealth of Puerto Rico, which at the time of the offense was classified as a felony by the law of the place where that offense was committed."
 
 
 27
 Thus two persons who both had twice previously committed the identical crime of possession of marijuana might be treated differently under Sec. 4251(f)(4) simply because one committed his crimes in Florida where possession over five grams is a felony and the other committed his in New York where it is only a misdemeanor, compare Fla.Stat. Secs. 404.02, 404.15 (1971), F.S.A., with New York Penal Law, McKinney's Consol. Laws, c. 40, Sec. 220.05 (1972 Supp.), or because one committed both of his crimes before May 1, 1971, and the other committed them after that date, when the federal offense of marijuana possession was reduced to a misdemeanor for first offenders, compare 21 U.S.C. Sec. 174, 26 U.S.C. Secs. 4744(a), 7237, repealed P. L. 91-513, 84 Stat. 1236, Sec. 1101, with 21 U.S.C. Sec. 844(a). Similarly, forgery of certain items constitutes a felony within one state while forgery of other materials is only a misdemeanor in the same state. Compare Fla.Stat. Secs. 831.01 and 831.03 (1971), F.S.A. Surely one cannot claim that committing a crime in Florida or in one year rather than another, or forging one document rather than another makes one a more hardened criminal.[18]
 
 
 28
 The example of changing statutory definitions also highlights the exclusion's disregard of all time limits, which though not an anomaly in the sense here used, is further evidence of the classification's irrationality. All prior felonies are counted-whether a joy-ride by a peer-imitating teenager or a rape committed by a 35-year old sex deviate during the pendency of the proceedings in which sentence is about to be imposed. Any intervening period between felonies of good behavior or attempts at rehabilitation are ignored; a person is thought to harden as a criminal merely because he accumulates a fixed number of judgments, regardless of changes in his personality or personal circumstances over time.
 
 
 29
 -In conjunction with Title III. Although the above anomalies show that Congress was at best using the crudest of tools in chiseling out the image of a hardened criminal, there is one final crowning inconsistency. The provisions of Title III of the Act, codified as 42 U. S.C. Secs. 3411-26, permit any narcotic addict or a related individual (as defined in Sec. 3411(i)) to petition for civil treatment commitment. In considering whether to request a court to commit the individual, the United States Attorney receiving the petition must only determine "that there is reasonable cause to believe that the person named in such petition is a narcotic addict, and that appropriate State or other facilities are not available to such person." 42 U.S.C. Sec. 3412(b). After the prescribed procedures, the court must only find that the petitioner is "a narcotic addict who is likely to be rehabilitated through treatment" before committing him. Id. Sec. 3415. Although the primary purpose of this title was to provide treatment to addicts before they entered a life of crime,[19] the only persons explicitly excluded are those against whom a criminal charge is pending or those who have not completed a sentence from a prior conviction. Id. Sec. 3421. Thus, an individual like Bishop who is about to be sentenced for his third felony is not eligible for commitment but one who has completed his sentence for his third felony conviction may be committed. This distinction cannot be explained on the grounds that the latter individual, subject to no threat of imprisonment, is acting wholly voluntarily in requesting commitment, a sign of earnest desire to be rehabilitated. The two-prior-felony disqualification is aimed primarily at avoiding "light" sentencing for or the introduction into NARA centers of dangerous criminals, not to weed out those unlikely to be rehabilitated. In any case, a petition for commitment may be brought not only by the willing patient but also by any specified relative and even by "any person with whom the alleged narcotic addict may reside or at whose house he may be." 42 U.S.C. Sec. 3411(i). The provisions for appointment of counsel and presence at examination of a retained physician, and for the right to present evidence and crossexamine witnesses, id. Secs. 3413, 3414(b), bespeak a Congressional assumption that the procedure will often be adversary and the resulting commitment involuntary.[20] Thus, lacking relevance to the purpose for which enacted, the two-prior-felony disqualification from consideration for treatment commitment in 18 U.S.C. Sec. 4251(f)(4) must fall.
 
 
 30
 We turn now to appellant's contention that because of his addiction he lacked the necessary mental state or mens rea to be held criminally responsible under the common law. The government claims that the issue was not properly raised at trial because appellant did not request the court, sitting without a jury, to make special findings, pursuant to Fed.R.Crim.P. 23(c), and that such a request is the appropriate way of preserving for appeal the issue of the proper legal standard to be applied. Wright, Federal Practice and Procedure: Criminal Sec. 374. We agree that the issue of the common law definition of criminal responsibility was not properly preserved at trial and find that the record here is not so complete nor the defendant's position at trial so clear that we should undertake determination of this complex issue notwithstanding the failure to comply with Rule 23. Id. Sec. 374.
 
 
 31
 Despite the absence of a Rule 23 request, the district court, after hearing argument on the legal claims after trial, volunteered, out of a commendable abundance of caution, a specific finding:
 
 
 32
 "that the Government has proved beyond a reasonable doubt that he had the ability to make a free choice, and he knew and decided to make the sales after a conversation with the agent."
 
 
 33
 This could admittedly be read as a rejection of either a common law or Eighth Amendment mens rea defense. However, examination of the oral argument to which this finding was a response, as well as the memorandum of law filed simultaneously (and a supplemental brief filed subsequently) indicates that the constitutional claim was the only one clearly raised and decided. In introducing this argument, counsel said:
 
 
 34
 "The contention of the defendant is that sentencing him to imprisonment under the circumstances of this particular case would be cruel and unusual punishment."
 
 
 35
 In then attempting to "trace relevant law on this particular issue", counsel discussed, as do the pages of the memorandum he specifically referred the court to, the Supreme Court cases of Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) and Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), and the District of Columbia Circuit cases of Easter v. District of Columbia, 124 U.S. App.D.C. 33, 361 F.2d 50 (1966) (en banc) and Watson, supra, all of which deal with the Eighth Amendment defense. Although at one point he did say that "[o]ur contention is that he lacked the requisite mens rea to be criminally responsibile for the charge", we believe his own summary is a fair representation of the thrust of his argument:
 
 
 36
 "that to sentence the defendant to imprisonment as a result of this act, knowing the condition he has been in . . . we believe would be cruel and unusual punishment in violation of the Eighth Amendment to the Constitution."
 
 
 37
 Even assuming, however, in light of defendant's testimony, the nature of counsel's cross-examination of government witnesses, some statements in his closing argument and memoranda, and the wording of his motion to dismiss, that defendant did raise a defense of lack of common law mens rea (although not preserving the issue of that defense's definition), his claim must fail on its own terms. The defense, as formulated by defense counsel at the argument at the close of trial, was:
 
 
 38
 "at the time of his alleged offense he was so completely addicted to the use of heroin that he had lost control of his senses and was unable to abstain from committing the crime for which he has been charged."
 
 
 39
 The government agent testified that on both occasions he had a conversation with the defendant regarding the price and the possibility of discounts for bulk purchases and that on the first occasion there was some discussion of the method of accounting for incomplete deliveries. Moreover, the first sale was of 120 bags and the second of 250, although the defendant testified that his own daily requirement was 37 bags. He also stated that he knew he was selling good heroin to the agent and indirectly admitted that he knew it was illegal to do so. We believe that the court below could properly conclude that an individual who sold in one case more than three times and in another almost seven times his daily habit following a discussion of price and adjustments for inadequate deliveries in order to obtain enough money to purchase the subsequent week's supply although perhaps completely addicted to heroin, had not lost control of his senses nor his ability to abstain from making those sales.[21]
 
 
 40
 We turn finally to appellant's related claim that his conviction and sentence of imprisonment were invalid under the Eighth Amendment. In Robinson v. California, supra, the Supreme Court held that a state cannot, consistent with the Eighth Amendment, penalize a person for the disease of narcotics addiction when the individual "has never touched any narcotic drug within the State or been guilty of any irregular behavior there." 370 U.S. at 667, 82 S.Ct. at 1420-1421. In Powell v. Texas, supra, the Court was asked to hold, as had the District of Columbia Circuit in Easter, supra, and the Fourth Circuit in Driver v. Hinnant, 356 F.2d 761 (4th Cir. 1966), that Robinson prevented conviction of a chronic alcoholic for public intoxication. Mr. Justice Marshall, writing for a four-member plurality, read Robinson as prohibiting only the imposition of punishment for a mere "status", which did not involve any guilty act, traditionally referred to as the actus reus, and not as creating a constitutional definition of mens rea. Mr. Justice White thought Robinson prevented conviction of an alcoholic for becoming drunk and, if the record established his inability to avoid being in public, for being drunk in public. He concurred in the judgment because he thought the record there did not establish Powell's inability to avoid public streets. Mr. Justice Fortas, writing for four dissenters, thought that Robinson precluded punishment not merely for a "status", such as being addicted, but also for any "condition" which is a characteristic part of the pattern of a disease and a consequence of a compulsion symptomatic of the disease. He specifically noted, however, that his rationale would not apply to "independent acts or conduct" such as drunken driving, assault, or theft, not a characteristic and involuntary part of the pattern of the disease. 392 U.S. at 559 n. 2, 88 S.Ct. 2145. Thus, the entire Court seemed to agree that whatever the scope of the Eighth Amendment defense of disease or disease compulsion, it did not encompass offenses involving independent, affirmative acts directly affecting others which are not characteristic, involuntary parts of a disease. We need not here canvass the scope of that defense. For, whatever its outer limits, see Watson, supra, United States v. Ashton, 317 F. Supp. 860 (D.D.C.1970), United States v. Lindsey, 324 F.Supp. 55 (D.D.C. 1971), it seems clear that it does not protect, on the record before us, one like the appellant who, knowing of the illegality of the conduct and following discussions of price and methods of adjusting incomplete deliveries, sells to another in exchange for a large sum of cash, a quantity of the substance to which he is compulsively addicted far in excess of his own immediate needs or daily requirements.
 
 
 41
 Since we have found the disqualification from eligibility for treatment commitment imposed by 18 U.S.C. Sec. 4251(f)(4) unconstitutional, we must vacate appellant's sentence and remand to the district court for determination, by a different judge, Mawson v. United States, 463 F.2d 29 (1st Cir. 1972), following an evidentiary hearing if the present record is inadequate, whether appellant is eligible under the proviso to Sec. 4251(f)(2) and, if eligible, whether appellant is a narcotic addict likely to be rehabilitated through treatment and thus to be committed in lieu of imprisonment, under 18 U.S.C. Sec. 4253(a).
 
 
 42
 Judgment of conviction affirmed; sentence vacated and case remanded for resentencing.
 
 
 
 *
 Of the Ninth Circuit, sitting by designation
 
 
 [1]
 H.R.Rep.No.1486, 89th Cong., 2d Sess. (1966), 1966 U.S.Code Cong. & Admin. News, pp. 4245, 4248 [hereinafter House Report]. See also S.Rep.No.1667, 89th Cong., 2d Sess. 12 (1966) [hereinafter Senate Report]; Hearings on H.R. 9051, 9159, 9167, and Related Bills Before Subcommittee No. 2 of the House Committee on the Judiciary, 89th Cong., 1st and 2d Sess., at 53-54, 78-79 (Attorney General Katzenbach), 149-50, 228-31 [hereinafter House Hearings]; Hearings on S. 2187, 2188, 2189, 2190, 2191, and 2578 Before the Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary, 89th Cong., 2d Sess., at 35 (Attorney General Katzenbach), 95, 160 (Acting Surgeon General Gehrig), 164-68 [hereinafter Senate Hearings]; 112 Cong.Rec. 11795, 11804, 11901, 25418, 25430-32, 28548. Except where otherwise noted, all citations to the hearings are to comments by members of Congress
 The Act was based on the House-passed Administration bill, H.R. 9167. The Senate, although also holding hearings on S. 2152, the Administration bill, Hearings on S. 2113, 2114, and 2152 Before Special Subcommittee of the Senate Committee on the Judiciary, 89th Cong., 2d Sess. (1966), originally passed S. 2191, Senator McClellan's bill, which differed primarily in its provisions for civil commitment of those not involved in the criminal process. These were adopted by the Conference Committee, Conf.Rep. No. 2316, 89th Cong., 2d Sess. (1966), 1966 U.S.Code Cong. & Admin.News, pp. 4263-69 [hereinafter Conference Report].
 
 
 [2]
 House Report, at 4249-50; Senate Report, at 13; House Hearings, at 84 (Attorney General Katzenbach), 370 (Myrl Alexander, Director, Bureau of Prisons); 112 Cong.Rec. 11795, 11815, 11821, 11826-27, 11888, 25433, 25434
 
 
 [3]
 House Report, at p. 4250. See also Senate Report, at 13; House Hearings, at 93 (Attorney General Katzenbach); 112 Cong.Rec. 11815, 25419
 
 
 [4]
 House Report, at 4251. See also Senate Report, at 13 ("safeguards to assure adequate protection of the general public against the addict who is or may be a hardened criminal"); House Hearings, at 103 (Acting Assistant Secretary of Treasury Hendrick), 121 (Surgeon General Terry), 230, 368 (Assistant Deputy Attorney General Sanders); Senate Hearings, at 55 (Special Assistant to the Secretary of Treasury Acheson); 112 Cong.Rec. 11796, 11815, 25419, 27616. There was some indication that such offenders should be punished not only to protect society but also because they were not likely to be rehabilitated. House Hearings, at 111 (Acting Assistant Secretary of Treasury Hendrick), 170, 242. But see n. 11 infra
 
 
 [5]
 The two-felony exclusion is derived from the Administration bill, which contained all five of the final exclusions in some form. House Hearings, at 14-15, 17. All of the other House bills considered by the Committee, except for Rep. Celler's bill, also had a two-felony exclusion. Id. at 1-14, 20-53. The Senate bill did not have such a disqualification. Senate Report at 7-8. In conference, where the House version of Titles I and II were adopted, the two-felony exclusion reappeared. Conference Report, at 2-3, 6; 112 Cong.Rec. 27616
 Most references to the two-felony exclusion were made in the course of general descriptions of the five exclusions and their overall purpose. The bill was usually said to exclude violent or dangerous offenders, a reference to the crime of violence and narcotics sale provisions, and hardened offenders or those with a history of offenses, a reference to the two-felony disqualification. See n. 4 supra. No more specific defense or explanation of the latter provision is to be found in the legislative record. All of the relatively few detailed or lengthy comments regarding the two-felony rule were criticisms of its arbitrary exclusion of individuals who were as much in need as and possibly even more likely to respond to treatment than those included by the bill. House Hearings, at 55, 151, 281 (Dr. Henry Brill, Consultant, New York State Department of Mental Hygiene), 357 (letter from Richard McGee, Administrator, California Youth and Adult Corrections Agency); 112 Cong. Rec. 11812.
 
 
 [6]
 Rep. Celler's bill, House Hearings, at 1-14, the Administration's major competitor in the House, and the Senate bill, S. 2191, as originally introduced, Senate Hearings, at 15-20, applied only to those charged with federal narcotic offenses. In light of the criticism of this limitation as arbitrary and unrealistic, House Hearings, at 121 (Surgeon General Terry), 151, 255 (Bronx Assistant District Attorney Gelfand), 281 (Dr. Henry Brill); Senate Hearings, at 35 (Attorney General Katzenbach), 86 (John Layton, D. C. Chief of Police), 185-86 (Acting Surgeon General Gehrig), 276 (Final Report of President's Advisory Commission on Narcotic and Drug Abuse), the House passed the Administration bill, the Senate Committee amended S. 2191 to cover all federal offenses, Senate Report, at 4, 17, and the Senate adopted the bill as amended. 112 Cong.Rec. 25434-35
 
 
 [7]
 See, e. g., House Hearings, at 76, 81, 99, 121, 151, 229, 248, 250, 312, 354, 357, 370, 389, 395; Senate Hearings, at 55, 95, 165-68, 177 (witness names omitted)
 
 
 [8]
 House Hearings, at 465 (letter of William Foley, Deputy Director, Administrative Office of the U. S. Courts)
 
 
 [9]
 House Report, at p. 4252
 
 
 [10]
 Id. See also House Hearings, at 81 (Attorney General Katzenbach)
 
 
 [11]
 At argument, the government informed the court that drug abuse programs had recently been established at seven federal prisons, that Bishop, if incarcerated, would be eligible for such treatment, and argued that he thus could not complain of a denial of equal treatment. Even assuming that we can properly consider such evidence not presented to the district court, we find the argument untenable. Although treatment of some sort might be afforded in prison, there are clearly major disadvantages, from both a personal and medical perspective, in being subjected to a prison environment
 We note also that the provision of treatment to addicted prisoners causes the government to shift somewhat its explanation of the two-felony disqualification from the original Congressional one, of insuring punishment either to protect society or because of the excluded individuals' supposed unsuitability for treatment, see n. 4 and accompanying text, supra, to the perhaps medically sounder one of merely excluding from NARA centers potentially disruptive criminal elements. Since, however, under either explanation, the two-felony exclusion is designed to define a class of hardened addict-criminals qualitatively different in their dangerousness or other anti-social characteristics, this shift does not alter our basic inquiry: whether the classification is relevant to that purpose. Of course, insofar as the government sought to defend the disqualification simply as a means of allocating resources, its defense is vitiated by the fact that repeat felons now do receive treatment.
 
 
 [12]
 The government claims that Bishop may not challenge the Sec. 4251(f)(4) disqualification because he failed to request at trial a finding, pursuant to Fed.R. Crim.P. 23(c), that the sales he was convicted of were made "for the primary purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use because of his addiction to such drug", as required under the Sec. 4251(f)(2) exclusion. We reject this argument because the "operative disqualification", as Watson called it, 439 F.2d at 456, was the two-priorfelony one; even if Bishop had requested and been granted the above finding, he would still have been disqualified because he had two prior felony convictions. Of course, in light of our decision vacating the sentence on grounds of the unconstitutionality of the two-felony disqualification, the district court will, on resentencing Bishop, have to consider the Sec. 4251(f)(2) disqualification and, if it finds the existing record inadequate for the determination required by the proviso, permit Bishop to present evidence regarding the sales' primary purpose
 
 
 [13]
 See, e. g., House Hearings, at 55, 73-74, 231, 234, 261; Senate Hearings, at 95; 112 Cong.Rec. 11797-801, 11804, 11808, 11820-27, 11887-89, 11904-06, 25419, 25432, 27619, 28549. As these citations indicate, Congressmen often did not distinguish in their discussions between the addicted and the nonaddicted seller. Indeed, the question whether any such distinction should be made prompted the fiercest controversy of this litigation and led to the disparate results now found in Titles I and II
 
 
 [14]
 In this context, it is interesting to note that several witnesses, in arguing either for the eligibility of all federal offenders, see n. 6, supra, or for the elimination of the two-felony disqualification, specifically noted that forgery is one of the crimes commonly committed by narcotic addicts to obtain money for their habits and that such addicts are in no less need of treatment than those who make money by other means. House Hearings, at 120-21 (Surgeon General Terry), 357 (letter of Richard McGee, Administrator, California Youth and Adult Corrections Agency)
 
 
 [15]
 House Hearings, at 151 (testimony of Sen. Robert Kennedy, relying on statement of Richard McGee, Administrator, California Youth and Adult Corrections Agency). See also id. at 357, for further statement by McGee
 
 
 [16]
 In United States v. Leazer, 148 U.S. App.D.C. 356, 460 F.2d 864 (1972), the court upheld, against an equal protection challenge, the seller exclusion in Title I, 28 U.S.C. Sec. 2901(g)(2), which does not contain the "primary purpose" exception. But the court there noted, quite properly, that the seller would have a chance for commitment after conviction, under Sec. 4251(f)(2), and that Congress might well have concluded that denying the seller the additional opportunity under Title I granted to non-trafficking addicts would help deter addicts from selling. Our problem is very different, for the two-felony disqualification is identical in both Titles I and II and thus the possible deterrent effect suggested in Leazer is not present
 
 
 [17]
 Of course, this discussion is not meant to imply any decision as to whether the statutory definition of "crime of violence" is itself irrational. That definition, at least with regard to unarmed street robbery, was upheld against a constitutional challenge in United States v. Turner, 337 F.Supp. 1045 (D.D.C.1972). Not only is the definition extremely detailed but it reflects careful Congressional consideration-the original exclusion of all burglaries and house-breakings was amended so as to confine it to only those committed at night. Compare 112 Cong.Rec. 11818 (1966) with 28 U.S.C. Sec. 2901(c) and 18 U.S.C. Sec. 4251(b)
 
 
 [18]
 In Smith v. Follette, 445 F.2d 955 (2d Cir. 1971), the Second Circuit upheld against an equal protection challenge a New York statute which made treatment commitment mandatory for all those convicted of a misdemeanor but discretionary with the judge for those convicted of a felony. But that statute referred only to New York crimes. Thus, the New York legislature knew which crimes would fall within each category when it enacted the commitment law and would be aware of the effect on that law of subsequently changing the classification of any crime or in creating a new crime. The Smith case is also distinguishable from ours, as the Second Circuit noted, because under that statute all addict-offenders were at least considered for treatment commitment, while under the Sec. 4251(f) disqualifications, several classes of addicts are absolutely barred from consideration and hence the possibility of treatment
 
 
 [19]
 Senate Hearings, at 165-68; Senate Report, at 20, 24; 112 Cong.Rec. 25419, 28549
 
 
 [20]
 Senate Report, at 23; 112 Cong.Rec. 28549
 Although we are, of course, not obligated to consider in depth the validity of provisions not before us, we note that comparison with the lack of exclusions in Title III does not necessarily render all of the exclusions in Titles I and II untenable. The first two exclusions, the crime of violence and narcotics sale-importation-conspiracy provisions, relate to the offense for which the individual is being processed. The freshness of the offense supports an inference of present dangerousness necessarily absent in civil commitment proceedings available only to addicts not presently involved in the criminal process. The two-prior-felony disqualification on the other hand, speaks to cumulative effects, the hardening of a criminal, which, if relevant to determining unsuitability for commitment to NARA facilities, should apply with equal force to all commitments. Although the three-prior-civil-commitment exclusion is also addressed to the significance of repeated failure, its purpose is not to exclude undeserving or disruptive criminal influences but to allocate resources to those most likely to benefit. Congress might well have thought it inadvisable to label untreatable individuals who, though not subject to any coercion, seek once again, under Title III, to be cured.
 
 
 [21]
 It should, of course, be abundantly clear from our earlier discussion that our use of defendant's proposed definition of a mens rea defense in this case in no way indicates our acceptance or approval, in whole or in part, of that definition