961 F.2d 217
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cher Jerry LEE, Defendant-Appellant.
 No. 91-50349.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 7, 1992.*
Decided April 27, 1992.
 
 1
 Before CANBY, REINHARDT and WIGGINS Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 Cher Jerry Lee ("Lee") was convicted by a jury on April 11, 1991, of possession with intent to distribute a controlled substance (opium) in violation of 21 U.S.C. § 841(a)(1), and importation of a controlled substance in violation of 21 U.S.C. § 952(a). He appeals, claiming that the district court erred when it instructed the jury that possession of a quantity of drugs in excess of an addict's requirement supports the inference of intent to distribute. We affirm.
 
 
 4
 Lee was questioned by customs inspectors in Los Angeles International Airport when he arrived aboard a Korean Airlines flight from Seoul, Korea. A subsequent search of Lee's suitcase revealed a pump-type tube of toothpaste and a plastic shampoo bottle, each of which contained a quantity of opium. A total of approximately 242 grams of opium were found in these two items.
 
 
 5
 Special Agent Wayne Lynn Wood of the United States Customs Service testified at Lee's trial that he had investigated over 1,000 narcotics cases, and that fifteen to twenty of these cases involved opium. He testified that the typical sales price for opium is approximately $30 per gram, and that the smallest amount of the drug normally available on the street was one gram. He also testified that one gram of opium could give a user approximately 10 "uses" ("highs"). On cross-examination, Wood testified that if one-tenth of a gram of opium was smoked, the "high" would last approximately two to three hours. He also testified that opium was habit-forming, and that a user would build up a tolerance to a drug. He also stated that someone who uses a lot of opium theoretically could use "well over a gram a day". On redirect, Wood testified that, based upon his experience as a narcotics enforcement agent, the purpose of bringing 242 grams of opium into the country "would be definitely for distribution.... [f]or distribution of sale to other people."
 
 
 6
 Lee testified that he did not know what opium was, had never seen it, and had never used it. The district court instructed the jury that in order for Lee to be found guilty of possession of opium with the intent to distribute, the government must prove that he had an intent to distribute, and defined that term in the following manner:
 
 
 7
 "The phrase 'with the intent to distribute' means to have in mind or to plan some way or deliver or transfer possession or control of a thing to someone else. In attempting to determine the intent of any person, you may take into your consideration all the facts and circumstances shown by the evidence received in the case concerning that person. In determining a person's intent to distribute a controlled substance, the jurors may consider among other things the quantity of the controlled substance, the manner of packaging, and the street value of the substance. The term 'to distribute' as used in these instructions means to deliver or to transfer--to attempt to deliver or to transfer--possession or control of something from one person to another. The term 'to distribute' includes the sale of something to one person to another."
 
 
 8
 After approximately four hours of deliberation, the jury requested that the court "[d]escribe in greater detail the term 'to distribute' as applies to sharing with others from personal use." The court responded to the juror's request with the following instruction:
 
 
 9
 "In Count One the defendant is charged with possession of opium with the intent to distribute it. He is not charged with possession of the drug only for his personal use. If you should find that his possession was only for his personal use, you should acquit him of Count One, because it has not been proven that he possessed it to distribute to others. If you find beyond a reasonable doubt that defendant possessed the drug both for his personal use and/or to share with others such evidence would support the guilty verdict to Count One.
 
 
 10
 Possession of a quantity of drugs in excess of what an addict's requirement for habit supports the inference of intent to sell or distribute. The evidence must show beyond a reasonable doubt that he knowingly and intentionally possessed the drug with intent to distribute same."
 
 
 11
 (emphasis added). An hour-and-a-half after the court delivered the supplemental instruction, the jury returned a guilty verdict on both counts. Lee contends that because there was no evidence that he had ever used opium--much less that he was addicted to it--the supplemental instruction's reference to the narcotic requirements of an addict was irrelevant, prejudicial, and improper.
 
 
 12
 "When reviewing an allegedly erroneous jury instruction, we consider the instructions as a whole. The adequacy of the entire charge must be evaluated in the context of the trial. Although the court must give an instruction relating to any legitimate theory of the defense that is supported by the evidence, the court has broad discretion in formulating the instructions, and neither party may demand specific language. A challenge to the language or to the formulation of an instruction must demonstrate an abuse of discretion." United States v. Frazin, 780 F.2d 1461, 1468 (9th Cir.), certs. denied, 479 U.S. 839 (1986), 479 U.S. 844 (1986). "Where a challenge is merely to the language of the instructions, we reverse only if the court abused its discretion." United States v. Stenberg, 803 F.2d 422, 433 (9th Cir.1986).
 
 
 13
 The supplemental instruction's reference to the possession of a quantity of drugs "in excess of ... an addict's requirement for habit" was derived from the opinion of the First Circuit in United States v. Bishop, 469 F.2d 1337, 1347-48 (1st Cir.1972). Bishop, however, does not address the propriety of particular jury instructions; instead, it concerns only the constitutionality of criminal laws that penalize the sale of controlled substances. See id. More importantly, unlike the defendant in Bishop, Lee's trial contained no evidence whatsoever that he was addicted to the drug that he allegedly possessed. The prosecutor stated the he "agree[d] [with the defense counsel] that there isn't any evidence that the defendant in this case is an addict," and himself suggested that "rather than saying an addict's requirements for his habit," the instruction should refer to "an amount that the defendant would use personally or an amount that he would use himself." Indeed, at one point, the court itself stated that "if it would make [defense counsel] any more comfortable, I could substitute the word 'user' for 'addict'," but despite that offer (and defense counsel's continued objection to any reference to an "addict's requirements"),[1] the court did not alter that passage of the instruction. The instruction's reference to the requirements of an addict thus was contrary to the wishes of both parties. However, any error that resulted would have been beneficial to the defendant in one respect--i.e., by establishing the largest possible amount intended for personal use as the personal use standard. At the same time, any such error could, in another respect, conceivably have been minimally harmful--i.e., by raising the thought in some jurors' minds that the defendant might be a narcotics addict. We will assume, therefore, that it was an abuse of discretion for the trial court to retain the objectionable language.
 
 
 14
 Improper jury instructions generally do not require automatic reversal--a conviction can be affirmed if the instruction is "harmless error". See United States v. Rhodes, 713 F.2d 463, 475 (9th Cir.1983), certs. denied, 464 U.S. 1012 (1983), 465 U.S. 1038 (1984). We have not yet decided whether erroneous jury instructions in criminal trials mandate reversal "only if it is 'more probable than not' that the error 'materially affected the verdict,' " Rhodes, 713 F.2d at 475 (quoting United States v. Valle-Valdez, 554 F.2d 911, 916 (9th Cir.1977)), or whenever the government has not established "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967). See United States v. Smeaton, 762 F.2d 796, 799-800 (9th Cir.1985). As in Smeaton, we need not resolve that issue here, because under either standard, the district court's error was harmless. The evidence against Lee on the importation count was overwhelming. The only substantial issue on the possession with intent to distribute count was whether the opium was intended for the defendant's personal use. With respect to that issue, as we have suggested, the error was to the defendant's advantage. In any event, as to both counts, it is clear beyond a reasonable doubt that the error did not affect the verdict. Although the reference to "addict" might have caused some jurors to reflect on whether the defendant was addicted, that is a question that very likely would have occurred to them in any event. The instruction--even with that term included--does not inform the jurors (correctly or incorrectly) that any evidence existed that the defendant was in fact an addict. Thus, although the language of the instruction may well have been improper, "there is no reasonable possibility that the defect in the jury instructions materially affected the verdict." Smeaton, 762 F.2d at 800.
 
 Accordingly, Lee's conviction is
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 21
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 3(f)
 
 
 [1]
 In response to the court's offer, defense counsel stated that he would indeed "make me more comfortable" to replace the word "addict" with "user", and also requested an additional change in the instruction as well. At the conclusion of the discussion regarding the supplemental instruction, when the district judge indicated that he would retain the instruction's reference to the "requirements of an addict", defense counsel stated that "just for the record, then, I'm going to object to the line about possession of a quantity of drugs in excess of an addict's requirement for his habit supports the inference. While reserving that objection, I would add my proposal to the alternative, which would be--if you are going to give a line like that--possession of a quantity of drugs in excess of what an individual would use personally ... rather than an addict's requirement for his habit ... because I think that has a tendency to be more directive to the jury." Defense counsel thus unquestionably preservedthat issue for appeal