No. 75–432. GRECO v. ORANGE MEMORIAL HOSPITAL CORP. ET AL. C. A. 5th Cir. Certiorari denied.

MR. JUSTICE WHITE, with whom THE CHIEF JUSTICE joins, dissenting.

This case presents the question whether a private hospital largely funded by the State and Federal Govern-

ments, partly controlled by the state government and the policymaking body of which is chosen by members of the community may, consistent with the Constitution, refuse to perform elective abortions. In unanimously answering the question in the affirmative, different members of the court below employed two distinct lines of analysis, each of which squarely conflicts with the rule of law existing in other Circuits. The question is important, the conflict is clear, and this Court has a responsibility to resolve it.

Petitioner is a doctor who had staff privileges at the respondent hospital at times relevant to this lawsuit.[1] The hospital had been built by the Orange County, Tex., government with local government money and with federal money obtained by Orange County under the Hill-Burton Act. 60 Stat. 1040, § 605, as added, 78 Stat. 453, and amended, 42 U. S. C. § 291e. The hospital and the land under it were owned by Orange County. However, in 1957, Orange County leased the hospital and the land under it for $1 per year to the respondent, Orange County Memorial Hospital Corp. (Corporation), a nonprofit tax-exempt corporation. Under the lease the Corporation agreed: (1) to operate the hospital as a nonprofit institution and to furnish to the general public medical and surgical care subject to such terms and regulations as the Corporation might prescribe; (2) to carry out the assurances required of the county in order to obtain federal funds and to relinquish possession of the hospital in the event it failed adequately to comply; (3) to have all equipment and

---

[1] Respondents point out that petitioner ceased his relationship with the hospital after the filing of the instant lawsuit and claim that the case therefore became moot. However this may be with respect to petitioner's injunctive and declaratory claims, his suit for damages is plainly still alive.

supplies inventoried, in a manner approved by the county, and to dispose of worthless, damaged, or worn-out equipment only with the prior approval of the Commissioners Court; (4) to be responsible for the expense of the day-to-day operation and maintenance of the hospital; (5) to make additions to the hospital with the written consent of the county and at its own expense; (6) to keep all appropriate insurance in effect; (7) to submit an annual audit to the county and to furnish any information which the county felt would be necessary to inform the people of Orange County about the operation and financial condition of the institution; (8) to accept indigent patients certified by the Corporation subject to the prior obligation to receive emergency cases. Orange County has reserved the right through its County Health Office to advise the Corporation that an indigent is being kept in the hospital for a longer period of time than necessary. The lease specifically indicates that the Corporation "has undertaken to relieve [the county] of the responsibility and expense of operating a hospital."

The policy of the hospital is, as a result of the lease to the Corporation, set by the Corporation's Board of Directors which consists of nine members. Five are drawn from "life members"—consisting of all people who have contributed $1,000 or more to the Corporation—and four are elected by "advisory-members"—consisting of any Orange County property owner who attends Corporation meetings.

The Board of Directors, on recommendation of the medical staff, adopted in early 1973 a policy against the performance of "elective" abortions at the hospital. As a result, petitioner was unable to accommodate patients who sought his services for that purpose. Petitioner then brought suit under 42 U. S. C. § 1983 against, *inter*

*alia,* the Corporation, its Board of Directors, and the County Commissioners of Orange County, seeking damages and injunctive relief Petitioner claimed that the actions of the respondents were unconstitutional in that they interfered with the liberty of a woman to choose whether or not to bear a child, in violation of the Fourteenth Amendment, as construed in *Roe* v. *Wade,* 410 U. S. 113 (1973), and also interfered with his right to practice his profession free from unconstitutional interference.[2]

The District Court dismissed petitioner's complaint essentially on the ground that the Board of Directors of the Corporation is a nongovernmental body and that the state instrumentality, *i. e.,* Orange County, was not responsible for the Board's decision not to give elective abortions. Absent such responsibility, respondents' conduct is not unconstitutional.

A panel of the Court of Appeals for the Fifth Circuit also concluded that respondents had not acted in viola-

---

[2] Respondents claim that *Roe* v. *Wade,* and *Doe* v. *Bolton,* 410 U. S. 179 (1973), recognize a constitutional right in the abortion decision of the woman seeking the abortion and not in the doctor; and argue that a doctor has no standing to litigate the interests of the pregnant woman except when he is the defendant in a criminal case. This argument was rejected by both courts below as being inconsistent with this Court's decision to extend standing to doctors in *Doe* v. *Bolton, supra,* at 188–189, who had been plaintiffs below and not defendants in a criminal case. Accord: *Wulff* v. *Singleton,* 508 F. 2d 1211 (CA8 1974), cert. granted, 422 U. S. 1041 (1975); *Nyberg* v. *City of Virginia,* 495 F. 2d 1342 (CA8 1974) (podiatrist); *Shaw* v. *Hospital Authority of Cobb County,* 507 F. 2d 625 (CA5 1975); *YWCA* v. *Kugler,* 342 F. Supp. 1048, 1055 (NJ 1972). In light of the fact that this Court will decide in *Wulff* v. *Singleton, supra,* the standing issue presented in this case, an outright denial of this petition can be justified only by a conclusion that the other issues decided below do not merit review.

tion of the Constitution. Two members of the panel agreed with the District Court and stated that the respondents had not acted in an unconstitutional manner because the "State" was not responsible for the Board of Directors' decisions. This conclusion is squarely in conflict with the law of two other Circuits. In *O'Neill* v. *Grayson County War Memorial Hospital*, 472 F. 2d 1140 (1973), the Sixth Circuit held a hospital to be an instrumentality of the State, the conduct of which is governed by the same constitutional limitations as the State's, on facts virtually identical to those involved here. In *O'Neill*, hospital facilities were owned by the county and leased to a foundation for the sum of $1 per year. The foundation agreed to fulfill all duties and responsibilities incident to the maintenance and operation of the hospital and agreed to assume the obligations and agreements that the county governing body had made with the United States in securing Hill-Burton funds. Similarly, the governing body of the hospital was to contain some members selected from the communities served by the hospital. The only fact even mentioned in the *O'Neill* opinion which is not mentioned in the opinion below is that there the nonprofit corporation was, in the event that it ceased to function, to pay to the local government any unused contributions. The provision, which would come into play only in the very unlikely event that the nonprofit corporation ceased to exist for other than financial reasons, can hardly explain the different result in that case. The decision in *O'Neill* conflicts with the decision in this case. The conclusion of the two judges below is also in conflict with the rule in the Fourth Circuit that a hospital is a governmental instrumentality solely by reason of receipt of Hill-Burton funds and the hospital's consequent legal obligations. *Christhilf* v. *Annapolis*

*Emergency Hospital Assn., Inc.*, 496 F. 2d 174 (1974); *Sams* v. *Ohio Valley General Hospital Assn.*, 413 F. 2d 826 (1969); *Simkins* v. *Moses H. Cone Memorial Hospital*, 323 F. 2d 959 (1963). Contra: *Watkins* v. *Mercy Medical Center*, 520 F. 2d 894 (CA9 1975); *Ascherman* v. *Presbyterian Hospital of Pacific Med. Ctr., Inc.*, 507 F. 2d 1103 (CA9 1974); *Doe* v. *Bellin Memorial Hospital*, 479 F. 2d 756 (CA7 1973); *Ward* v. *St. Anthony Hospital*, 476 F. 2d 671 (CA10 1973); *Jackson* v. *Norton-Children's Hospitals, Inc.*, 487 F. 2d 502 (CA6 1973).

The third member of the panel below also concluded that the respondents had engaged in no unconstitutional conduct. He stated that the *State* may properly choose to fund operations by paying for the hospital in which they are performed, without permitting the hospital to be used for any particular type of operation. This conclusion is squarely contrary to the decisions of two Circuits, *Doe* v. *Poelker*, 515 F. 2d 541 (CA8 1975); *Nyberg* v. *City of Virginia*, 495 F. 2d 1342 (CA8 1974); and *Doe* v. *Hale Hospital*, 500 F. 2d 144 (CA1 1974); and contrary in principle to the law in several others. *Doe* v. *Rose*, 499 F. 2d 1112 (CA10 1974); *Wulff* v. *Singleton*, 508 F. 2d 1211 (CA8 1974), cert. granted, 422 U. S. 1041 (1975); *Doe* v. *Mundy*, 514 F. 2d 1179 (CA7 1975); see also *Roe* v. *Norton*, 380 F. Supp. 726 (Conn. 1974); *Doe* v. *Wohlgemuth*, 376 F. Supp. 173 (WD Pa. 1974); *Doe* v. *Rampton*, 366 F. Supp. 189 (Utah 1973); *Klein* v. *Nassau County Medical Center*, 347 F. Supp. 496 (EDNY 1972); *Doe* v. *Westby*, 383 F. Supp. 1143 (SD 1974), vacated and remanded, 420 U. S. 968 (1975); and cf. *Hathaway* v. *Worcester City Hospital*, 475 F. 2d 701 (CA1 1973).

It is apparent that on either theory adopted by the members of the court below to support its conclusion that the respondents had not acted in violation of the

Constitution, there is a conflict with the law in other Circuits. Whether or not the Court agrees with the result reached below, the conflicts are square; they are on issues which arise with frequency in the lower federal courts; and they are on significant questions of law. Perhaps, in light of the current pressures on our docket, there may be a category of conflicts, involving insignificant points of federal law, which we simply do not have the capacity to resolve. However, it would undoubtedly surprise members of the bar and the public that this Court views the conflicts created by the decision below to fall within such a category.

The task of policing this Court's decisions in *Roe* v. *Wade,* 410 U. S. 113 (1973), and *Doe* v. *Bolton,* 410 U. S. 179 (1973), is a difficult one; but having exercised its power as it did, the Court has a responsibility to resolve the problems arising in the wake of those decisions. I would grant the petition for a writ of certiorari and set this case for oral argument.