EUGENE GARROW, M.D., PLAINTIFF-RESPONDENT, v. ELIZABETH GENERAL HOSPITAL AND DISPENSARY, DEFENDANT-APPELLANT.

Argued November 13, 1978—Decided May 15, 1979.

550

*Mr. Peter A. Somers* argued the cause for appellant (*Messrs. Lindabury, McCormick and Estabrook,* attorneys).

*Mr. Harold J. Ruvoldt, Jr.* argued the cause for respondent (*Messrs. Ruvoldt and Ruvoldt,* attorneys).

A brief was submitted on behalf of *amicus curiae* New Jersey Hospital Association (*Messrs. Smith, Stratton, Wise & Heher,* attorneys; *Ms. Mary K. Brennan* of counsel; *Ms. Brennan* and *Ms. Ann Reichelderfer* on the brief).

The opinion of the court was delivered by
SCHREIBER, J. Plaintiff, Dr. Eugene Garrow, filed a complaint accompanied by an order to show cause in the Superior Court, Chancery Division, seeking to restrain the Elizabeth

General Hospital (Hospital) from conducting a hearing on his application for membership to the Hospital staff until plaintiff was permitted to examine all pertinent documents in defendant's possession. On his initial application for a restraining order, plaintiff expanded his claim to include the right to have counsel present during the hearing. The parties agreed that the hearing would be postponed until the trial court decided the merits of the controversy.

Defendant filed a motion to dismiss the complaint which was returnable on the same day as the final hearing before the trial court. At that time plaintiff again enlarged his demands with defendant's acquiescence by objecting to the proposed hearing being held by a committee of defendant's Board of Trustees. The trial court dismissed the complaint at the conclusion of the hearing. The Appellate Division reversed, 155 *N. J. Super.* 78 (1977), and we granted defendant's petition for certification. 76 *N. J.* 233 (1978).

█ No evidence was introduced at the hearing before the trial court. Rather, the parties stipulated to the facts recited in their respective briefs.[1] In addition to the stipulated facts the trial court had the benefit of an affidavit of the president of the Hospital, a copy of the by-laws of the Hospital's Board of Trustees, and a copy of the by-laws of its Medical Staff.

An undisputed factual picture emerges from this record. Defendant Elizabeth General Hospital is a private non-profit eleemosynary institution organized pursuant to laws of the State of New Jersey. Its facilities are generally available to residents of Elizabeth and environs. There are approximately 225 physicians on the staff.

The ultimate governing body is a 21-member Board of Trustees who serve without compensation. The Board generally meets once a month (except during July and August). Much of its business is conducted through 11 standing com-

---

[1] Although this procedure is acceptable, better practice calls for the marking of such documents into evidence or a recital into the record of the agreed upon facts.

mittees. However, applications for membership are processed through the Hospital's Medical Staff.

A set of by-laws approved by the Board of Trustees governs the Medical Staff organization. They prescribe the procedure to be followed and the prerequisites to qualifications for staff membership. In addition to being legally licensed to practice medicine and surgery in the State, a person must be able to demonstrate competence, a good reputation, and ability to work with others, the Hospital's ultimate purpose being to assure a high quality of medical care treatment. The selection process is set in motion by the filing of an application in which detailed information concerning qualifications must be supplied. Included is a requirement to disclose whether membership or clinical privileges have ever been denied, revoked, suspended, reduced or not renewed at any other hospital. The Medical Staff by-laws provide that the applicant has the burden of producing adequate information for a proper evaluation of competence, character and ethics, and for resolving doubts about such qualifications. The by-laws also state that the applicant by applying for appointment agrees to appear for interviews, authorizes consultation with members of other hospital staffs with which the applicant has been associated, and releases from any liability all representatives of the Hospital for their acts performed in good faith in connection with evaluation of the applicant.

The completed application is presented to the Hospital's director who checks the applicant's references and transfers the results to the Credentials and Eligibility Committee. This committee conducts an investigation, interviews the applicant and submits its findings to the Medical Organization Committee of the Medical Staff. This committee recommends acceptance, rejection, or remand to the Credentials and Eligibility Committee for additional information. The Medical Organization Committee's recommendations are transmitted to the Board of Trustees.

If the Board of Trustees rejects the application, notice is given to the applicant who may request a hearing. If a hearing is requested, it is held before a hearing committee designated by the Board. The committee must include at least one member of the Medical Staff. The purpose of the hearing is to resolve matters bearing upon the professional ethics and competency of the applicant. The by-laws also provide that neither the applicant nor the Board of Trustees may have counsel unless the hearing committee permits both attorneys to be present. Court rules of evidence do not apply. An accurate record of the proceedings must be kept and the applicant must appear. The hearing committee submits its recommendations to the Board of Trustees which then reconsiders the matter and makes its final determination.

Plaintiff submitted his application to the defendant's director and this application was then processed. The Medical Organization Committee reviewed his application and recommended denial. The Board of Trustees adopted the committee's recommendation, notified the plaintiff and advised him that he was entitled to a hearing if he so desired. Upon plaintiff's request for a hearing, the Board designated a hearing committee and fixed May 21, 1976 as the hearing date.

After the hearing request, a copy of the minutes of the committee meeting in which the reasons for the adverse report were set forth was sent to plaintiff's counsel. The minutes described in some detail the investigation and summarized its conclusions in the following manner:

1. ON HIS APPLICATION, DR. GARROW DID NOT DISCLOSE THE FACT THAT HE HAD BEEN DENIED MEDICAL STAFF MEMBERSHIP AT BAYONNE HOSPITAL, EVEN THOUGH THE APPLICATION SPECIFICALLY REQUIRES SUCH DISCLOSURE. FURTHERMORE, THE APPLICATION SAYS THAT THE APPLICANT CONCURS THAT "ANY MISSTATEMENTS IN, OR OMISSIONS FROM, THIS APPLICATION SHALL CONSTITUTE CAUSE FOR REJECTION OF THIS APPLICATION AND, AT ANY TIME THEREAFTER,

FORFEITURE OF MEMBERSHIP ON THE MEDICAL STAFF, IN THE SOLE AND FINAL DISCRETION OF THE BOARD OF TRUSTEES." THE COMMITTEE CONSIDERED THIS OF ITSELF TO BE SUFFICIENT AND ADEQUATE REASON TO DENY THE APPOINTMENT.

2. DR. GARROW'S EXPLANATION AS TO WHY HIS APPLICATION WAS DENIED AT BAYONNE HOSPITAL WAS INADEQUATE.

3. ON HIS APPLICATION, DR. GARROW DID NOT DISCLOSE THAT HE WAS A MEMBER OF THE STAFF AT UNITED HOSPITALS, WHERE HE WAS THEN APPARENTLY UNDER SCRUTINY REGARDING HIS PRACTICE.

4. THERE APPEARS TO BE A SERIOUS QUESTION ABOUT DR. GARROW'S EXERCISE OF HIS CLINICAL JUDGMENT AT UNITED HOSPITALS. ALSO, THERE APPEARS TO BE A QUESTION AS TO WHETHER HE LIMITS HIS SURGICAL PRACTICE TO THE FIELD OF HIS SPECIALTY.

5. THERE IS A QUESTION AS TO DR. GARROW'S ABILITY TO GET ALONG WITH OTHER PHYSICIANS, AS INDICATED IN THE LETTER OF REFERENCE FROM THE DIRECTOR OF SURGERY AT JERSEY CITY MEDICAL CENTER AND IN THE LETTER FROM THE CHIEF EXECUTIVE OFFICER AT BAYONNE HOSPITAL.

After receipt of a copy of the minutes, plaintiff commenced this action in which he sought disclosure of all documents in the Hospital's file material to his application. The trial court concluded that the suit was premature. It pointed out that in every reported decision in this State, the legal proceedings were instituted after the hospital's final action. Referring to the principle that when factual and constitutional issues are presented in an administrative setting the exhaustion principle should be applied, the trial court reasoned that logic dictated application of the same principle to this suit. It noted that the proceedings were in an interlocutory status and that plaintiff might well be successful, in which event the controversy would become moot. Accordingly, the trial court held that the matter was not ripe for judicial review.

The Appellate Division reversed. Finding that adequacy of the hearing implicated concepts of fundamental procedural due process, it held that judicial intervention was justified.

It found that procedural due process in the conduct of the hearing was required and that the right to counsel inhered in that process. It further decided that plaintiff's right to prehearing discovery should be honored. However, it perceived no impropriety in the Board of Trustees' delegating the hearing to a committee.

We do not agree that judicial review at this interlocutory stage was warranted. However, in view of the status of the matter, we shall discuss the merits of the issues raised so that the hearings may be expeditiously conducted and concluded.

This case deals with a non-profit private hospital serving the public generally, as distinguished from a purely private hospital or one owned by a governmental body. A non-profit private hospital serving the public generally is a quasi-public institution whose obligation to serve the public is the linchpin of its public trust and the fiduciary relationship which arises out of the management of that trust. Thus, the hospital board of trustees has been vested with the responsibility of attempting to elevate standards of medical care. See *Greisman v. Newcomb Hosp.*, 40 *N. J.* 389, 403 (1963). In *Doe v. Bridgeton Hosp. Ass'n, Inc.*, 71 *N. J.* 478 (1976), *cert.* den. 433 *U. S.* 914, 97 *S. Ct.* 2987, 53 *L. Ed.* 2d 1100 (1977), we stated that "boards of directors or trustees are managing quasi-public trusts and each has a fiduciary relationship with the public." 71 *N. J.* at 487. When a hospital's board of trustees or directors is in the process of determining whether a doctor should be admitted to its staff, the hospital's public trust is directly involved in view of the public's interest in the quality and availability of medical service. The board, of course, has an interest in preserving its autonomy and in maintaining control over the quality of its staff. Additionally, doctors, particularly surgeons, have a substantial interest in favorable responses to their applications for staff membership, for their ability to pursue their profession may depend on the availability of necessary hospital facilities. See *Falcone v. Middlesex Cty. Medical Soc.*, 34

*N. J.* 582, 587 (1961). Furthermore, it is obviously important that they protect their professional reputations. All of these identifiable values are proper components to be considered when measuring the adequacy of the process dealing with an application for admission to a hospital staff.

Although processing and determination of an application by a hospital have many characteristics similar to licensing by an administrative agency, certain basic differences do exist. Hospitals like the Elizabeth General Hospital have not been created by government and their boards have not been endowed with the powers usually vested in administrative agencies by legislative enactments. Administrative agencies frequently have broad investigatory authority supportable by the power to issue subpoenas and obtain sanctions for their enforcement. They have the authority to promulgate rules and regulations which fill in legislative interstices and have a legislative effect. On the other hand, both the administrative agency and the hospital board of trustees do exercise discretion and bring expertise to their respective tasks. Both must also pay due respect to procedural safeguards whether because of constitutional due process or fundamental fairness. See *Cunningham v. Dept. of Civil Service,* 69 *N. J.* 13, 19–20 (1975) ; *Avant v. Clifford,* 67 *N. J.* 496, 520–521 (1975).

Many of the rules which are applicable to judicial intervention in proceedings before administrative agencies would seem as a matter of principle to be equally applicable to appointment procedures before a hospital board. These would include the fundamental concept that administrative remedies should be fully explored before judicial action is sanctioned. See Comment, "Exhaustion of Remedies in Private Voluntary Associations," 65 *Yale L. J.* 369, 387 (1956), suggesting that nonmembers should be required to exhaust remedies available to them within an association before seeking judicial interference through a suit involving the association's internal policies, functions or administration. Exhaustion of administrative remedies before resort to the courts

is a firmly embedded judicial principle. See *Central R. R. Co. v. Neeld,* 26 *N. J.* 172, 178, *cert.* den. 357 *U. S.* 928, 78 *S. Ct.* 1373, 2 *L. Ed.* 2d 1371 (1958). This principle requires exhausting available procedures, that is, "pursuing them to their appropriate conclusion and, correlatively * * * awaiting their final outcome before seeking judicial intervention." *Aircraft & Diesel Equip. Corp. v. Hirsch,* 331 *U. S.* 752, 767, 67 *S. Ct.* 1493, 1500, 91 *L. Ed.* 1796, 1806 (1947).

The reasons for the rule relate with like force to hospital proceedings. If the complaining party prevails before the administrative agency or the hospital board, judicial proceedings would have been unnecessary and the court would have intervened needlessly. See *L. Jaffe, Judicial Control of Administrative Action* 424–426 (1965). Our policy has been to discourage piecemeal litigation. For example, the single controversy doctrine is designed to eliminate delay, to prevent harassment and unnecessary clogging of the judicial system, and to avoid wasting time and effort of the parties. See *Falcone v. Middlesex Cty. Medical Soc.,* 47 *N. J.* 92 (1966). Further, the expertise of an administrative agency may not be exercised or known until it renders its final decision, and usually upon judicial review due deference is accorded that expertise. A hospital board presumably has expertise in certain areas, particularly in determining a physician's qualifications in relation to a hospital's facilities, needs and personnel. The medical staff is in a position to review credentials and evaluate competency and effectiveness. This special knowledge is available to the board of trustees whose decisions could have a substantial impact on the quality of care to be provided. In this respect it must be remembered that a hospital board is vested with a broad managerial discretion to seek improvement in medical care. Justice Jacobs in *Greisman v. Newcomb Hosp., supra,* commented:

> Hospital officials are properly vested with large measures of managing discretion and to the extent that they exert their efforts toward the elevation of hospital standards and higher medical care, they will receive broad judicial support. [40 *N. J.* at 403]

Accordingly, exhaustion of the internal hospital proceedings is warranted when, as here, the board's decision relates to the qualifications of the medical staff. Furthermore, it is preferable to decide issues after factual disputes have been resolved by the fact-finding body and not in a vacuum. Often the issues will become more limited and sharpened when the facts have been delineated. These results will generally be embodied in the factual findings of the agency or the hospital at the conclusion of the proceedings. Lastly, administratively and in the interest of orderly procedure, it is advisable to permit "the administrative process to go forward without interruption * * *." *McKart v. United States,* 395 *U. S.* 185, 194, 89 *S. Ct.* 1657, 1663, 23 *L. Ed.* 2d 194, 203 (1969). Interruption of the administrative process is not justifiable to any greater extent than interference with the trial process by interlocutory appeals. We have equated the two in our rules. See *R.* 2:5–6 which provides the mechanics for leave to appeal from interlocutory orders of courts and from interlocutory decisions or actions of state administrative agencies. Such leave is to be granted only "in extraordinary cases and in the interest of justice * * *." *R.* 2:2–3(b). A comparable provision exists governing reviews of the type previously available by prerogative writ. *R.* 4:69–5 states:

> Except where it is manifest that the interest of justice requires otherwise, actions under *R.* 4:69 [actions in lieu of prerogative writs] shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.

Logically and sensibly all these principles are apposite to hospital proceedings of the type involved here.

Our application of the exhaustion principle to proceedings of non-governmental bodies based on private agreements or

documents is not without precedent. We have applied the principle with respect to remedies arising out of a collective bargaining contract. *Jorgensen v. Pennsylvania R.R. Co.,* 25 *N. J.* 541, 556–558 (1958); *Donnelly v. United Fruit Co.,* 40 *N. J.* 61, 88 (1963). See also *Siena v. Grand Lodge, Order Sons of Italy in America,* 11 *N. J. Super.* 507, 517 (App. Div. 1951) (member seeking to examine corporation's records must first exhaust internal procedures); *Calabrese v. Policemen's Benevolent Ass'n, Local No. 76,* 157 *N. J. Super.* 139, 145–146 (Law Div. 1978) (court will entertain challenge to expulsion from association only if internal remedies have been exhausted). See generally Annot., 20 *A. L. R.* 2d 344, 384–387 (1951); Annot., 20 *A. L. R.* 2d 421, 486–487 (1951); Annot., 20 *A. L. R.* 2d 531, 564–565 (1951) (exhaustion required where members expelled from social clubs, religious organizations or professional associations, respectively).

█ The exhaustion doctrine is not an absolute. Exceptions exist when only a question of law need be resolved, *Nolan v. Fitzpatrick,* 9 *N. J.* 477, 487 (1952); when the administrative remedies would be futile, *Naylor v. Harkins,* 11 *N. J.* 435, 444 (1953); when irreparable harm would result, *Roadway Express, Inc. v. Kingsley,* 37 *N. J.* 136, 142 (1962); when jurisdiction of the agency is doubtful, *Ward v. Keenan,* 3 *N. J.* 298, 308–309 (1949); or when an overriding public interest calls for a prompt judicial decision, *Baldwin Const. Co. v. Essex Cty. Bd. of Taxation,* 24 *N. J. Super.* 252, 274 (Law Div. 1952), aff'd 27 *N. J. Super.* 240 (App. Div. 1953). The assertion of a constitutional right may be one factor to be considered in determining whether judicial intervention is justified — but it is only one of many relevant considerations. Justice Pashman discussed the significance of a constitutional claim on the propriety of judicial intervention in *Brunetti v. Borough of New Milford,* 68 *N. J.* 576 (1975):

The mere allegation that a constitutional issue is involved does not relieve plaintiffs of the exhaustion requirement. To void this

requirement, plaintiffs must demonstrate not only that the constitutional question is colorable, but that the matter contains no factual questions which require administrative determination. *Mut. Home Dealers Corp. v. Comm. of Bank. and Ins.*, 104 *N. J. Super.* 25, 31 (Ch. Div. 1968), aff'd o. b. 55 *N. J.* 82 (1969) See *Roadway Express, Inc. v. Kingsley*, *supra*, 37 *N. J.* at 140, where this Court held that plaintiff's allegation that the corporate franchise tax statute was unconstitutional *as applied* required detailed findings of fact and that therefore plaintiff had to exhaust its administrative remedies. [*Id.* at 590–591]

More recently in *Paterson Redevelopment Agency v. Schulman*, 78 *N. J.* 378 (1979), he observed:

Even assuming that defendants have raised a question of constitutional dimension, we are unable to accept the conclusion that this alone justifies an exception to the general doctrine of exhaustion of administrative remedies. [*Id.* at 386]

In the instant case the Appellate Division concluded that plaintiff's claims for discovery prior to the hearing and presence of counsel implicated "traditional concepts of fundamental procedural due process" to such an extent that judicial intervention was warranted. We do not agree.

There was no crucial need which would justify judicial intervention because of the claim for discovery. The minutes particularized in some factual detail the doctor's alleged inadequacies, and plaintiff would have become aware at the hearing of any other underlying data which the Board possessed. There is no reason to believe that the Board would not have afforded him additional time to prepare and present evidence in rebuttal.

Nor does plaintiff's claim to right to counsel rise to such level as to warrant interlocutory judicial interference. In *Sussman v. Overlook Hosp. Ass'n*, 95 *N. J. Super.* 418 (App. Div. 1967), the Appellate Division held that

it is not essential that plaintiffs be afforded the right to confront and cross-examine witnesses or to be represented by counsel in the presentation of their case. It is within the discretion of the board of trustees as to whether counsel may attend the hearing and participate in the proceedings. [*Id.* at 425–426]

That proposition had remained unimpeached and unimpaired. It is understandable that the defendant Hospital did not consider the presence of an attorney essential in hearings of this nature. Its by-laws provided that:

The hearing is for the purpose of resolving matters bearing upon professional ethics and competency, and accordingly, neither the applicant, the medical staff, nor the board of trustees shall be represented in the hearing by an attorney unless the hearing committee, in its discretion, permits both sides to be represented.

In the absence of a showing, allegation or admission that the Hospital's action reflected state action, *Greco v. Orange Memorial Hosp. Corp.,* 513 *F.* 2d 873 (5th Cir.), *cert.* den. 423 *U. S.* 1000, 96 *S. Ct.* 433, 46 *L. Ed.* 2d 376 (1975) (holding that tax exemptions and receipt of Hill-Burton grants, even in combination with other factors, did not result in a sufficient nexus to constitute state action),[2] fundamental constitutional due process may not be invoked. Even assuming that principles of fundamental fairness support the plaintiff's claim to have counsel present, a court should before permitting judicial intervention weigh and consider the offsetting factors of orderly procedure, elimination of unnecessary judicial proceedings, and due deference to the expertise of and available to the board concerning medical competency and professional ethics in view of the broad management discretion vested in the board in such matters. In our view, better practice would have been to decline the exercise of jurisdiction as the trial judge had done, particularly in light of the existing state of the law, *Sussman v. Overlook Hosp.*

---

[2]To the same effect, see, *e. g., Doe v. Bellin Memorial Hosp.,* 479 *F.* 2d 756 (7th Cir. 1973). The court in *Jones v. Eastern Maine Medical Center,* 448 *F. Supp.* 1156, 1162–1163 (D. Me. 1978), noted that only the Fourth Circuit has repeatedly taken a contrary position. See, *e. g., Doe v. Charleston Area Medical Center,* 529 *F.* 2d 638 (4th Cir. 1975).

*Ass'n, supra,* the Hospital's even-handedness as reflected in the by-laws and the absence of a constitutional basis.[3]

As we indicated previously, since the issues have been briefed and argued, we shall proceed to discuss them. See *Paterson Redevelopment Agency v. Schulman, supra* at 388–389. The principal questions concern prehearing discovery and presence of counsel, both of which issues may be more properly considered in the context of the type of hearing which is to be held.

■ Fundamental fairness dictates that the hospital apprise the physician of the specific charges, *Guerrero v. Burlington Cty. Memorial Hosp.,* 70 *N. J.* 344, 359 (1976), and that the applicant be afforded the opportunity to appear and present witnesses and material in support of his position and to contradict or explain the bases asserted for the proposed denial. Such hearings in addition to affording the doctor an opportunity to respond to charges, *Guerrero v. Burlington Cty. Memorial Hosp., supra* at 359, enable a hospital to make "an intelligent and reasonable judgment in good faith upon all the facts presented." *Sussman v. Overlook Hosp. Ass'n, supra* at 425.

■■ When cognizance is given to the inability of a hospital's board of trustees to subpoena other doctors and records and officials of other medical institutions, coupled with a natural reluctance on the part of some to become involved, it is obvious that as a practical matter the hearings before a

---

[3]Our concurring and dissenting colleague, although agreeing with the general principle of exercising judicial restraint before interfering with a hospital's processing of a claim, suggests that plaintiff would have suffered irreparable harm had he been required to exhaust the Hospital's internal procedures, in that the Board of Trustees, having rejected his application once, would be unable to conduct a new hearing free from the taint of the first. 79 *N. J.* at 555. We have no reason to believe that a hospital board of trustees would not on a remand, if one became necessary, act objectively and in good faith, and, in any event, its action would be subject to judicial review.

hospital's board of trustees, which usually consists of civic minded citizens serving on a *pro bono publico* basis, cannot be conducted as full scale trial-type hearings. The subject matter of investigations in which hospitals engage, particularly information concerning the competency and compatibility of a doctor, is by its very nature delicate and sensitive. Obtaining information depends on the voluntary cooperation of other comparable institutions and members of the medical profession, including those on the hospital's staff. Having available the expert opinion of doctors on its own staff for advice on competency would appear to be an essential source for the board of trustees to tap. However, much if not all the information which will have been presented to the board will consist of letters, reports and medical records. There is no requirement that the hearings be formal and that there be adherence to the rules of evidence.[4] This is not to say that the board's findings and conclusions will be upheld if arbitrary and capricious. Its conclusions must be founded on reasonable and sensible grounds.

Judicial review of the hospital board's action should properly focus on the reasonableness of the action taken in relation to the several interests of the public, the applicant, and the hospital. The proper standard upon review is not identical with that customarily applied to administrative agencies, that is, substantial competent credible evidence. See *Weston v. State,* 60 *N. J.* 36, 51 (1972). This is not warranted nor possible in view of the nature of the hearing. However, the record should contain sufficient reliable evidence, even though of a hearsay nature, to justify the result. We recognize that this modifies our holding in *Guerrero v. Burlington Cty. Memorial Hosp., supra* at 356.

---

[4]Under constitutional due process, the process which is due depends on the particular circumstances. See the discussion in *Nicoletta v. No. Jersey Dist. Water Supply Comm'n,* 77 *N. J.* 145, 163–166 (1978).

We have never spoken on the right of an applicant physician to counsel during the hearing. As indicated above, in *Sussman v. Overlook Hosp. Ass'n, supra,* the Appellate Division held that it was not essential that the applicant doctor be afforded the right to confront and cross-examine witnesses or be represented by counsel. Although it has been argued somewhat convincingly that presence of counsel may aggravate the adversary nature of the hearings, Ludlam, "Physician-Hospital Relations: The Role of Staff Privileges," 35 *Law & Contemp. Prob.* 879, 890 (1970), we do not believe that possibility justifies exclusion of counsel. Compare "The Right to Counsel at Hospital Hearings — One View," 101 *N. J. L. J.* 92 (1978), with "The Right to Counsel at Hospital Hearing: Why Not?", 101 *N. J. L. J.* 116 (1978). *Cf.* Comment, "Hospital Medical Staff Privileges: Recent Developments in Procedural Due Process Requirements," 12 *Willamette L. J.* 137, 147 (1975) (proposing representation by another physician). It may be that counsel's role may be limited, for cross-examination and confrontation of adverse witnesses will not necessarily occur. See *Woodbury v. McKinnon,* 447 *F.* 2d 839 (5th Cir. 1971). However, the attorney, in addition to being in a position to advise the client during the hearing, will have the opportunity to present evidence on his behalf, to meet and explain adverse data, and to present argument to the board. In view of the physician's substantial interest in proceedings of this nature, on balance we believe that the physician should have the right to have counsel present at mandated hospital hearings with respect to his application for admission to the staff. *Contra, Anton v. San Antonio Community Hosp.,* 19 *Cal.* 3d 802, 140 *Cal. Rptr.* 442, 567 *P.* 2d 1162 (1977); *Silver v. Castle Memorial Hosp.,* 53 *Haw.* 475, 497 *P.* 2d 564, cert. den. 409 *U. S.* 1048, 93 *S. Ct.* 517, 34 *L. Ed.* 2d 500 (1972). Counsel's participation and his role will be subject to the reasonable rules laid down by the Hospital's board of trustees or other authorized persons and management and control of

the hearings will rest with the person or persons in charge. In this manner hearers "can assure that delaying tactics and other abuses sometimes present in the traditional adversary trial situation do not occur." *Morrissey v. Brewer*, 408 *U. S.* 471, 490, 92 *S. Ct.* 2593, 2604–2605, 33 *L. Ed.* 2d 484, 499 (1972). We have no doubt that counsel will conduct himself within the established framework. Whether or not to have counsel will be the physician's choice.

Plaintiff's prehearing request that defendant's entire file be opened to his examination is too broad a demand. Defendant's detailed explanation and factual bases for its refusal, as reflected in the committee's minutes, certainly alerted plaintiff on what matters he had to meet at the hearing. However, we are of the opinion that the relevant and material underlying data upon which the Board of Trustees relied in arriving at its conclusions should be made available to plaintiff (at his expense) prior to the hearing so as to enable him to prepare adequately. This, of course, would not preclude defendant from producing other material at the hearing because of subsequent developments, so long as plaintiff is given an adequate opportunity to meet or explain the new information. The Hospital has expressed concern that disclosure of much of the information it receives will impede its ability to investigate a doctor's competence and temperament. It adds that reports submitted frequently bear a legend to the effect that the source shall remain confidential. We recognize the merit of the Hospital's position, but we must also consider the serious impact on the physician. On balance the fair solution calls for divulging the information. It may not be necessary to disclose the source of that information particularly if it is not relevant or material. Frequently, it is the substance of the material alone upon which the determination is based and the identity of the person who led the board to that information is not material. Furthermore, there may be alternatives available even where normally the source may be most important, such as in the area of expert opinions. For example, a staff doctor may

criticize the manner in which a medical procedure was performed, but the board may properly rely then on medical literature which describes the correct methodology rather than its staff doctor's opinion. If, however, it becomes necessary to disclose the name of the doctor, then it would be appropriate to recognize that he would be entitled to a qualified privilege with respect to any such disclosure. We have previously recognized a qualified privilege in this area. See *Raymond v. Cregar*, 38 *N. J.* 472, 481 (1962), where we held that board members should have the widest latitude in discussing qualifications of candidates for staff appointments so long as they act in good faith and that statements made in such discussions are qualifiedly privileged. Substantial precedents decided under the umbrella of constitutional due process support the fairness of prehearing discovery. *Christhilf v. Annapolis Emergency Hosp. Ass'n, Inc.*, 496 *F.* 2d 174, 180 (4th Cir. 1974) ; *Suckle v. Madison Gen. Hosp.*, 362 *F. Supp.* 1196, 1211–1212 (W. D. Wis. 1973), aff'd 499 *F.* 2d 1364 (7th Cir. 1974). See also *Laje v. R. E. Thomason Gen. Hosp.*, 564 *F.* 2d 1159 (5th Cir. 1977), *cert.* den. 437 *U. S.* 905, 98 *S. Ct.* 3091, 57 *L. Ed.* 2d 1134 (1978) ; *Duffield v. Charleston Area Medical Center, Inc.*, 503 *F.* 2d 512 (4th Cir. 1974). *Contra, Koelling v. Trustees of Mary Frances Skiff Memorial Hosp.*, 259 *Iowa* 1185, 1203–1204, 146 *N. W.* 2d 284, 296 (1966).

We are in full agreement with the Appellate Division that plaintiff is not entitled to a hearing by the entire Board of Trustees and that its delegation to a committee of this function is perfectly proper, so long as the Board of Trustees makes the final decision. See *Christhilf v. Annapolis Emergency Hosp. Ass'n, Inc., supra* at 181, where the court recommended that the hearing be conducted by a committee.

The judgment, as modified, is affirmed.

PASHMAN, J., concurring and dissenting in part. Although I am fully in agreement with the result reached by the major-

ity and with its reasoning as to the procedural rights to be accorded plaintiff at the hospital hearing, I respectfully disagree with its conclusion as to exhaustion of remedies. In my view, the policies protected by that generally salutary doctrine are not adequately implicated in these circumstances so as to outweigh plaintiff's right to immediate judicial intervention.

Courts are generally agreed that a plaintiff's challenge to the validity of an agency's procedures is not subject to the exhaustion doctrine. *See, e. g., Mathews v. Diaz,* 426 *U. S.* 67, 96 *S. Ct.* 1883, 48 *L. Ed.* 2d 478 (1976) ; *Mathews v. Eldridge,* 424 *U. S.* 319, 96 *S. Ct.* 893, 47 *L. Ed.* 2d 18 (1976) ; *Finnerty v. Cowen,* 508 *F.* 2d 979 (2d Cir. 1974) ; *Fitzgerald v. Hampton,* 152 *U. S. App. D. C.* 1, 467 *F.* 2d 755 (1972) ; *Francois v. Bushell,* 325 *F. Supp.* 531, 533 (N. D. Cal. 1971), aff'd *sub nom. Temple v. Bushell,* 500 *F.* 2d 591 (9 Cir. 1974) (*per curiam*) ("when a party challenges the essential adequacy of his administrative remedy, exhaustion is not required"). In certain circumstances, moreover, plaintiff will not even be required to request the agency to modify its procedures before seeking judicial intervention. *Mathews v. Eldridge, supra.*

The reasons underlying this exception to the exhaustion requirement are both forthright and compelling. The doctrine of exhaustion of administrative remedies serves three major purposes: (1) the rule ensures that claims will be heard, at least as a preliminary matter, by a body possessing relevant expertise; (2) it allows the creation of a factual record necessary for meaningful appellate review; and (3) a favorable agency decision may obviate the need for judicial involvement. *Bd. of Educ. of Bernards Tp. v. Bernards Tp. Educ. Ass'n,* 79 *N. J.* 311, 317 (1979). *See McKart v. United States,* 395 *U. S.* 185, 194–195, 89 *S. Ct.* 1657, 1662–1663, 23 *L. Ed.* 2d 194, 203–204 (1969) ; *Paterson Redevelopment Agency v. Schulman,* 78 *N. J.* 378, 386–388 (1979).

The first consideration is in no way implicated in cases challenging the validity of agency procedures. Quite the

contrary, this consideration militates in favor of immediate judicial intervention. Plaintiff is not here making a claim as to his medical qualifications but, rather, contends that the hospital hearing procedures violate fundamental fairness. This is an area in which courts, not hospital personnel, have expertise. *Cf. McKart v. United States, supra,* 395 *U. S.* at 197–198, 89 *S. Ct.* at 1664–1665, 23 *L. Ed.* 2d at 205–206. Any insight which hospital members might possibly possess as to the contours of due process within the hospital setting can best be obtained through their participation in court proceedings. Further, plaintiff has already requested hospital authorities to grant the procedures he seeks but they have refused.

The second consideration, that a factual record be created, is equally inapposite in challenges to agency procedures. The issue here is purely legal — whether hospitals must, as a general matter, provide certain procedural safeguards. No factual record is necessary to decide this question. In such cases, we have found that the exhaustion rule need not apply. *Nolan v. Fitzpatrick,* 9 *N. J.* 477, 487 (1952). Two cases cited by the majority, *Brunetti v. Borough of New Milford,* 68 *N. J.* 576 (1975) and *Paterson Redevelopment Agency v. Schulman,* 78 *N. J.* 378 (1979), see *ante* at 561–562, are not pertinent here. Both involved situations requiring factual findings and agency interpretations of relevant statutes. Moreover, neither involved challenges to the agency's procedural protections.

The final policy underlying the exhaustion doctrine is the avoidance of unnecessary adjudication. This is the only policy at all implicated in the instant matter, for if the hospital, after a hearing, grants plaintiff his desired staff privileges, he will have no need to challenge the hearing procedures.[1] Al-

---

[1] In a technical sense, this aspect of the question is really a ripeness issue rather than one involving exhaustion of remedies inasmuch as the issue to be considered by the hospital authorities — medical qualifications — is wholly dissimilar to the procedural ques-

though avoidance of litigation is a worthwhile goal, it does not, in this case, outweigh the potential harm that may be suffered by plaintiff if judicial intervention is not allowed. The hospital staff has already made a preliminary decision to deny staff privileges to plaintiff. Thus, the chance of a favorable decision alleviating the need for judicial involvement is remote. More importantly, however, the failure to presently adjudicate plaintiff's claim may cause him irreparable harm. A decision by an appellate court setting aside, on procedural grounds, any adverse hospital determination will not make plaintiff whole. It is naive to believe that the hospital committee, having once made a final determination as to plaintiff's lack of qualifications, will be able to conduct a new hearing totally free from the taint of the first, procedurally unfair, hearing. It is too much to expect that even well-meaning administrators will be able to perform the mental gymnastics necessary to approach the new hearing completely fresh and open-minded.[2] Thus, the hearing that a successful plaintiff may obtain will be something less than a substitute for an original fair hearing.

The above consideration is particularly pertinent in a case such as the one at hand. The procedural shortcomings present

tion which we are here asked to decide. The real nub of the issue is the possibility that plaintiff may be granted his privileges and so may not suffer any harm. Although the majority is, in fact, discussing the incorrect doctrine, this has no bearing upon the ultimate determination of whether plaintiff should have proceeded with the proffered hearing before seeking judicial review.

[2]In denying the proposition that persons, however well intentioned, are subject to a tendency to stick with a decision once made (see *ante* at 564, n. 3) the majority disregards a large body of relevant case law. *See, e. g., Wilson v. United States*, 534 *F.* 2d 130, 138 (9th Cir. 1976) (Hufstedler, dissenting) ; *United States v. Hammerman*, 528 *F.* 2d 326 (4th Cir. 1975) ; *United States v. Huff*, 512 *F.* 2d 66 (5th Cir. 1975) ; *United States v. Schwarz*, 500 *F.* 2d 1350 (2d Cir. 1974) (*per curiam*) ; *United States v. Vale*, 496 *F.* 2d 365 (5th Cir. 1974) ; *United States v. Bishop*, 469 *F.* 2d 1337 (1st Cir. 1972) ; *Mawson v. United States*, 463 *F.* 2d 29 (1st Cir. 1972) (*per curiam*).

in the hearing process are such as may hinder the search for truth and promote erroneous determinations. Thus, under the majority's formulation, the taint of an erroneous original determination may well be carried over to the second, court-mandated, hearing.

Not every case challenging agency procedures requires exemption from the exhaustion requirement. Rather, a court asked to intervene must, in light of the facts, consider the policies underlying the doctrine and balance the equities involved.[3] In this case the procedural challenge was broad based and deeply implicated notions of fundamental fairness. Under the circumstances, I have no hesitancy in determining that exhaustion of remedies was not required.

I also wish to add a brief note as to limitation of the extent of counsel's participation at hospital hearings. It should be emphasized that the majority opinion allows only reasonable regulation of attorney conduct. Thus, unduly restrictive limitations are not sanctioned. As the majority notes, the attorney must be allowed to marshall evidence, explain adverse material and present argument. Moreover, if adverse witnesses are presented, some right of questioning must be allowed. The majority's statement that "cross-examination and confrontation of adverse witnesses will not necessarily occur," see *ante* at 566, merely recognizes that in cases where the determination is based on documents rather than live witnesses, there can, of course, be no cross-examination. The validity of particular regulations must await their challenge in a proper case.

Although the majority misapplies the doctrine of exhaustion of administrative remedies, nevertheless it reaches

---

[3]In making such a determination the judge should consider, *inter alia*, the extent of the asserted procedural deficiency, the possibility of irreparable harm and the possible disruption of orderly agency administration. None of these factors is necessarily determinative; each should be considered in light of the circumstances of the particular case.

the merits of this case. Inasmuch as its resolution of this issue is just and equitable, I concur.

*For affirmance as modified*—Chief Justices HUGHES and Justices MOUNTAIN, SULLIVAN, CLIFFORD, SCHREIBER and HANDLER—6.

*Concurring in part and dissenting in part*—Justice PASHMAN—1.