**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1818-23

ADRIAN EVANS and KENNETH
HICKS, on behalf of themselves and
all others similarly situated persons,

     Plaintiffs-Appellants,

v.

CITY OF PATERSON and
PATERSON FIRE DEPARTMENT,

     Defendants-Respondents.

_____

Submitted October 10, 2024 – Decided January 28, 2025

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1915-23.

Sattiraju & Tharney, LLP, attorneys for appellants (Ravi Sattiraju, of counsel and on the briefs; Brendan P. McCarthy, on the briefs).

Taylor Law Group, LLC, attorneys for respondents (Christopher J. Buggy, on the brief).

PER CURIAM

Plaintiffs Adrian Evans and Kenneth Hicks are employed by defendant City of Paterson (Paterson) as firefighters assigned to the Paterson Fire Department and are members of the Paterson [f]irefighters Association (Association), who negotiate with Paterson on behalf of plaintiffs with respect to the terms of their employment.  Plaintiffs appeal from a November 28, 2023 order, which granted defendants' motion to dismiss and compel arbitration pursuant to Rule 4:6-2(a), and the court's January 26, 2024 order denying plaintiffs' subsequent motion for reconsideration.  We reverse.

I.

On July 17, 2023, plaintiffs filed a class action complaint alleging certain terms of the Collective Bargaining Agreement (CBA) violate their statutory rights under the New Jersey Wage and Hour Law (NJWHL), N.J.S.A. 34:11-56a1 to -56a41, as it allegedly permits defendants to pay overtime compensation contrary to the NJWHL.  Plaintiffs claim they routinely worked over forty hours per week without receiving the statutorily required overtime payment for doing so.

The CBA provides the standard workweek for firefighters "not assigned to the Chief's office . . . consist[s] of twenty-four . . . hours on duty followed by

seventy-two . . . hours off duty followed by twenty-four . . . hours on duty followed by seventy-two . . . hours off duty" while "[t]he work[]week for [f]irefighters assigned to the Chief's office [is] determined by the Chief." The CBA also expressly states it "shall be limited only by the specific and express terms of [the] Agreement provided such terms are in conformance with the Constitution and law of New Jersey and of the United States and [o]rdinances of [Paterson]" and "shall not be construed as a waiver of any right or benefit to which employees are entitled by law."

Article XIII provides overtime compensation, "approved in advance by the Fire Chief or the Fire Chief's designee through the approved chain of command[,] . . . will be paid at [one and one-half] at a rate determined by dividing by two . . . times the biweekly gross pay by one hundred sixty-eight . . . hours." An employee chooses whether "[o]vertime at the end of the regular tour of duty [is] paid in cash or compensatory time," an award of "time off . . . in lieu of cash overtime payments," which is also accrued at "[one] and one-half . . . hours of [compensatory time] for each hour of overtime work."

Next, Article XIII places limitations on the amount of compensatory time an employee may accrue, i.e., a "maximum of sixty-four . . . clock hours" whereby an employee thereafter is "paid cash overtime payments for all

3

approved overtime in excess of sixty-four clock hours maximum." Finally, in the event an employee denies an opportunity to work overtime, the CBA states they "shall be considered as having worked such overtime for the sole purpose of maintaining a proper order of rotation for future overtime assignments and is entitled to no overtime pay."

Article III of the CBA details a grievance procedure the "[e]mployees, [s]upervisors, and the [c]ity are expected to exhaust" to settle grievances, which the contract defines as a "dispute between the parties involving the interpretation or application of any provisions of [the CBA]." The aggrieved parties, however, "by written consent[,] may waive all steps [of the grievance procedure] except arbitration."

Further, Article III explains the importance of expediency in the grievance process. The agreement sets a specific number of days whereby each step of the grievance process must be completed, which "[u]nless [there is] an extension . . . mutually agreed to by the parties . . . the aggrieved employee and/or the Association may proceed to the next step of the grievance procedure." "Failure to submit the grievance to the next step by the employee or the Association within the specified time shall terminate the grievance." An aggrieved employee is also "entitled to be represented by the Association or at

4

his expense a legal representative of his own choosing in the presentation and processing of [the] grievance in all stages."

The steps of the grievance procedure are as follows. First, the "employee shall discuss problems or grievances with his immediate supervisor" who "shall evaluate the problem or grievance, and within the scope of his authority pursuant with Rules, Regulations, and Procedures of the [Paterson Fire] Department, attempt to adjust the grievance within twenty-four . . . hours." However, "if the subject of the grievance involves a dispute affecting multiple employees [it] shall be initiated within twenty[-]five . . . calendar days after its occurrence."

Second, in the event "no satisfactory agreement is reached" after step one, the "grievance may be submitted to the Fire Chief or designee within five . . . days" who "shall have ten . . . days to submit his decision in writing to the Association or grievant." Third, "if no satisfactory agreement is reached after Step 2, the grievance may be submitted to the Public Safety Director or designee within five . . . days after receipt of [the] Step 2 decision." Thereafter, "[t]he [P]ublic [S]afety Director or designee shall have ten . . . days to submit a decision in writing to the Association or grievant."

In the event a grievance remains unresolved following step three of the above-described process, "within twenty . . . days following the receipt of the

Director's decision, the Association shall have the right to bring grievances . . . to binding and impartial arbitration." Notably, however, "[o]nly the Association shall have the right to bring grievances to arbitration" and the "arbitrator shall be selected pursuant to the rules and regulations of the Public Employment Relations Commission [(PERC)]."

The arbitration clause further provides "[t]he arbitrator shall be bound by the provisions of [the CBA and] . . . shall not have the authority to add to modify, detract from, or alter in any way the provisions of [the CBA]." Finally, the CBA provides "[t]he [a]rbitrator shall render a decision within thirty . . . days after the filing date of the last post-hearing written summation or the date both parties conclude closing statements whichever date is later" and "[t]he cost for the services of the Arbitrator shall be borne equally by [Paterson] and the Association."

On September 26, 2023, Paterson filed a motion to dismiss pursuant to Rule 4:6-2(a) for lack of subject matter jurisdiction and to compel arbitration in accordance with the CBA, and Rule 4:6-2(e) for failure to state a cause of action under the NJWHL. Relying on Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 441 (2014), plaintiffs contended the "CBA says the contract is not intended and shall not be construed as a waiver of any right or benefit to which

employees are entitled by law."  Plaintiffs further asserted its NJWHL claim presented "legal issue[s] that the [c]ourt ha[d] to decide . . . [and] not . . . issue[s] that [could] be determined by an arbitrator at arbitration."

As noted, in a November 28, 2023 order, the court granted defendants' motion to dismiss after concluding plaintiffs' claims were encompassed by the CBA's alternative dispute clause, including its arbitration provision.  In its written statement of reasons, the court reviewed the language in the CBA and found that "[p]laintiffs are bound by the CBA to submit claims related to the interpretation or application of the [CBA] to binding arbitration before the PERC."

On December 14, 2023, plaintiffs sought reconsideration of the court's determination that the CBA required plaintiffs to proceed to binding arbitration. On January 26, 2024, the court entered an order and statement of reasons denying plaintiffs' motion for reconsideration.

II.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)).  We

A-1818-23

therefore "need not give deference to the [legal] analysis by the trial court." Ibid. (alteration in original) (quoting Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019)). In our review of an order compelling arbitration, we "construe the arbitration provision with fresh eyes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016).

We do not review a court's reasoning; we review only the trial court's judgment or order. Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015). In our analysis of plaintiffs' arguments on appeal, we therefore consider "only the propriety of the [order] entered by the trial court, not the reasoning underlying the court's decision." Ibid. (citing Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)).

In reviewing orders compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (explaining "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes" (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002))). Arbitration, as a favored means for dispute resolution, is not, however

"without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

Moreover, our legislature has encouraged the resolution of labor disputes by arbitration in the public sector. In that regard, the Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -43, provides "[i]n interpreting the meaning and extent of a provision of a collective negotiation agreement providing for grievance arbitration, a court or agency shall be bound by a presumption in favor of arbitration. Doubts as to the scope of an arbitration clause shall be resolved in favor of requiring arbitration." N.J.S.A. 34:13A-5.3.

"Arbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Atalese, 219 N.J. at 441. A legally enforceable arbitration agreement "requires 'a meeting of the minds,'" id. at 442 (quoting Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)), and the effective waiver of a party's right to a jury trial "requires a party to have full knowledge of [their] legal rights and intent to surrender those rights." Ibid. (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). "Moreover, because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'"

A-1818-23

Id. at 442-43 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011)).

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48. The mutual assent necessary for a valid arbitration agreement "requires that the parties have an understanding of the terms to which they have agreed." Atalese, 219 N.J. at 442. And, "under New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Id. at 443 (alteration in original) (quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003)); see also Martindale, 173 N.J. at 96 (enforcing an arbitration agreement because, among other things, it "was clear and unambiguous"). With these principles in mind, we address the parties' arguments.

III.

A.

Plaintiffs first argue, as they did before the court, the CBA's arbitration provision is unenforceable because it does not include a clear and unambiguous waiver of their right to seek judicial remedies as required by long-standing New Jersey law, particularly Atalese. They argue the CBA:

(1) does not indicate that firefighters agree to waive their rights to pursue statutory claims under New Jersey law in a judicial forum, including the right to file a lawsuit[;] (2) does not reference the types of claims waived under the agreement[;] and (3) does not explain the difference between arbitration and litigation or expressly waive the right to proceed to a jury trial.

Plaintiffs further explain the CBA includes the opposite of a waiver, as it states the "[c]ontract is not intended and shall not be construed as a waiver of any right or benefit to which employees are entitled by law."

In response, defendants aver, "[a]s required by Atalese, the arbitration clause in the Agreement is conspicuous and straightforward." Although defendants acknowledge Atalese—involving a less sophisticated "consumer"—requires a "clear and unambiguous" waiver, they contend its holding is inapplicable to agreements between public employers and employees "requiring binding arbitration of disputes regarding the terms and application of such an agreement." Relying on our decision in County of Passaic v. Horizon Healthcare Services, Inc., defendants further note explicit waivers are not required in agreements between sophisticated parties. 474 N.J. Super. 498, 504 (App. Div. 2023), certif. granted, 254 N.J. 69 (2023), certif. dismissed per stipulation, No. A-46-22 (Nov. 8, 2023).

As a threshold matter, we reject defendants' argument that Atalese is inapplicable because plaintiffs are members of a bargaining unit. We discern no reason, nor does the record contain evidence sufficient to conclude, that employees bound by a CBA should be charged with a greater understanding of their rights than the average consumer, or are entitled to less rights.

Indeed, the Atalese Court in fashioning the clear and unambiguous test favorably cited the Supreme Court's decision in Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998), which held a "'union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination' must be 'clear and unmistakable.'" Atalese, 219 N.J. at 444 (quoting Wright, 525 U.S. at 80); see also Darrington v. Milton Hershey Sch., 958 F.3d 188, 194 (3d Cir. 2020) (explaining a CBA may waive employees' rights to bring statutory claims in a judicial forum provided such waiver is clear and unmistakable); Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 53 (1st Cir. 2013) ("[P]recedent dictates that a CBA's waiver of federal statutory claims must be clear and unmistakable."); Ibarra v. UPS, 695 F.3d 354, 356 (5th Cir. 2012) (applying the clear and unmistakable waiver test to determine whether union members agreed to waive their right to submit Title VII claims in court).

Additionally, our decision in County of Passaic is factually distinguishable from the instant matter. In that case, we concluded "an express waiver of the right to seek relief in a court of law to the degree required by Atalese is unnecessary when parties to a commercial contract are sophisticated and possess comparatively equal bargaining power." County of Passaic, 474 N.J. Super. at 504. The parties in County of Passaic were a municipality and a health insurance company with a seventeen-year relationship involving multiple contracts. Id. at 501, 504. Both were represented by counsel, and the record in that case reflected negotiation of several contracts. Id. at 504-05. Thus, we concluded the parties were sophisticated and possessed relatively equal bargaining power. Id. at 501, 504.

Here, there is no evidence in the record before us supporting the conclusion plaintiffs are the types of parties we had in mind in County of Passaic. For example, there is nothing in the record detailing the extent of any negotiations related to the arbitration or any other provision in the CBA, how many contracts the Association and Paterson negotiated, whether the Association was separately represented by counsel, the length of the relationship between the parties, or other facts bearing upon our analysis on this point.

We are satisfied beyond any doubt, applying <u>Atalese</u>, the arbitration clause in the CBA is unenforceable because it fails to include a "clear and unambiguous" explanation of rights waived. <u>See</u> 219 N.J. at 445. The <u>Atalese</u> Court held "[t]he absence of <u>any</u> language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable." <u>Id.</u> at 436 (emphasis in original). In reaching this conclusion, we acknowledge, however, <u>Atalese</u> does not require specific language to accomplish an effective waiver of rights. <u>Id.</u> at 447.

The arbitration provision before us fails to contain the language necessary to constitute an effective waiver of a party's rights to judicial relief. First and foremost, the CBA expressly reserves plaintiffs' rights in this regard by stating this "[c]ontract is not intended and shall not be construed as a waiver of any right or benefit to which employees are entitled by law." "The right to trial by jury in civil cases is deeply rooted in New Jersey's history and 'predates the founding of our Republic.'" <u>Skuse</u>, 244 N.J. at 65-66 (Albin, J., concurring) (quoting <u>Allstate N.J. Ins. Co. v. Lajara</u>, 222 N.J. 129, 134, 139-41 (2015)).

Further, the CBA does not disclose that arbitration would replace litigation or a jury trial and appears to limit the right to an arbitral forum to the Association, excluding the individual firefighters from that remedy. That result

14 <span>A-1818-23</span>

is contrary to the CBA's express recognition that it will not impact an individual firefighter's access to any "right or benefit to which [they] are entitled by law."

As a result, the instant arbitration clause does not comport with arbitration provisions our Supreme Court previously validated. See Martindale, 173 N.J. at 96 (stating that "arbitration agreement not only was clear and unambiguous, it was also sufficiently broad to encompass reasonably plaintiff's statutory causes of action"); Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (upholding an arbitration clause which stated "[b]y agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes"). We are therefore satisfied the CBA's arbitration clause does not contain a clear and unambiguous waiver of plaintiffs right to seek judicial remedies and is thus unenforceable, as it is inconsistent with New Jersey law.

B.

Next, plaintiffs contend, "[t]o the extent there is any issue as to the arbitrability of [p]laintiffs' NJWHL claims, that question should be decided by the trial court and not by an arbitrator." We conclude this dispute belongs before the trial court, not PERC.

15

PERC is charged with administering the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-5.2, and has primary jurisdiction to determine "whether the subject matter of a particular dispute is within the scope of collective negotiations." Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 155 (1978) (citing N.J.S.A. 34:13A-5.4(d)). PERC's role is to make a threshold determination of whether the disputed matter is something the parties can legally negotiate and make subject to arbitration. N.J.S.A. 34:13A-5.4(d). PERC may not interpret contracts; "contract interpretation is a question for judicial resolution." Ridgefield Park Educ. Ass'n, 78 N.J. at 155.

The issue before us requires a determination of whether the CBA's arbitration provision contains a clear and unambiguous waiver of plaintiffs' rights to bring statutory claims in a judicial forum. As "contract interpretation is a question for judicial resolution," ibid., plaintiffs properly brought the matter in court.

## C.

Finally, plaintiffs contend they "were not required to first exhaust the grievance procedures under the CBA before filing a lawsuit seeking to enforce their NJWHL claims." Relying on a series of cases addressing the exhaustion of administrative remedies doctrine in the context of statutory discrimination

16

claims, plaintiffs argue "New Jersey courts have long held that grievance procedures in collective bargaining agreements or employment contracts do not have to be exhausted before filing a claim before the Division of Civil Rights or in a civil suit." Plaintiffs argue they need not exhaust the administrative remedies available to them because it would be futile, and their statutory claims present solely issues of law.

"Exhaustion of administrative remedies before resort to the courts is a firmly embedded judicial principle." Garrow v. Elizabeth Gen. Hosp. & Dispensary, 79 N.J. 549, 558-59 (1979). We recognize, however, "[t]he exhaustion doctrine is not an absolute." Id. at 561. "Exceptions exist when only a question of law need be resolved; when the administrative remedies would be futile; when irreparable harm would result; when jurisdiction of the agency is doubtful; or when an overriding public interest calls for a prompt judicial decision." Ibid. (citations omitted).

Furthermore, courts need to evaluate whether a grievance procedure and arbitration provision are mandatory or permissive. In Riverside Chiropractic Group v. Mercury Insurance Co., we considered an arbitration provision in an insurance contract that said a personal injury protection dispute "may be submitted to dispute resolution by" the injured party, the insured, or the insured's

17

provider. 404 N.J. Super. 228, 233 (App. Div. 2008). Based on the policy's plain language, we concluded the word "may" did "not mandate arbitration." Id. at 237. As such, when a contract states that one party "may" submit a dispute pursuant to a grievance procedure, that process is permissive, not mandatory. See ibid.

Applying these principles, we are persuaded plaintiffs were not required to exhaust the administrative remedies available to them prior to filing their complaint. First, the grievance procedure within the CBA does not mandate the aggrieved party follow the grievance process. Indeed, the CBA states "employees and the Association are expected to present their grievances through regular supervisory channels." (emphasis added). The use of the term "expected" clearly gives plaintiffs the option of following the grievance procedure but does not mandate they do so.

Second, plaintiffs need not exhaust the administrative remedies available to them because "only a question of law need be resolved." Garrow, 79 N.J. at 561. Here, the only challenge to the CBA's policy is based on statutory grounds. Before us, the parties do not appear to challenge the factual allegations asserted in plaintiffs' complaint; specifically, that plaintiffs routinely worked in excess of forty hours per week as evidenced by Article XII of the CBA, or that at all

18

times relevant to the matter plaintiffs were compensated pursuant to the terms of the CBA.

In fact, defendants acknowledge in their merits brief "[p]laintiffs were paid in accordance with the terms" of the CBA and the "agreement establishes the workweek for firefighters not assigned to the chief's office." Under these circumstances, we are satisfied the exhaustion of administrative remedies doctrine is inapplicable, and the matter was properly before the court. Ibid.; see also Student Members of the Playcrafters v. Bd. of Educ. of the Twp. of Teaneck, 177 N.J. Super. 66, 73 (App. Div.), aff'd o.b., 88 N.J. 74 (1981) (holding the exhaustion of administrative remedies doctrine inapplicable where the only issue to be resolved was "based on constitutional grounds and no factual issues exist[ed] which require[d] administrative determination").

In light of the foregoing, we need not, and do not, reach the merits of plaintiffs' claim the CBA violates the NJWHL.[1] We reverse the November 28, 2023 order granting defendants' motion to dismiss and compel arbitration pursuant to Rule 4:6-2(a). We also vacate the court's January 26, 2024 order

---

[1] Because the court did not make factual findings or legal conclusions on whether the CBA's overtime provision is void under the NJWHL, we decline to consider it in the first instance.

A-1818-23

denying plaintiffs' subsequent motion for reconsideration because that order was dependent on the court's initial decision to dismiss and compel arbitration.

To the extent we have not addressed any remaining arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Reversed and remanded for further proceedings in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1818-23